Jaime Charles NONN, Appellant,

v.

The STATE of Texas.

No. 933–02.

Court of Criminal Appeals of Texas.

Oct. 15, 2003.

Joseph A. Connors, III, McAllen, for appellant.

Amy Howell Alaniz, Asst. DA, Edinburg, Matthew Paul, State's Atty., Austin, for state.

## *OPINION*

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB and COCHRAN, J.J., joined.

Jaime Charles Nonn appeals from his conviction for capital murder. TEX. PENAL CODE § 19.03(2). Because the State chose not to seek the death penalty, the jury's finding of guilt resulted in a sentence of life in prison. The Court of Appeals upheld his conviction. *Nonn v. State,* 13 S.W.3d 434 (Tex.App.-Corpus Christi 2000). This Court granted appellant's petition for discretionary review to determine whether the admission at trial of an out-of-state confession was governed by Article 38.22 of the Texas Code of Criminal Procedure.[1]

When this case first came to us, we held that Article 38.22 was a procedural evidentiary rule, and thus was applicable as the law of the forum in which the trial was held. *Nonn v. State,* 41 S.W.3d 677 (Tex. Crim.App.2001). We vacated the judgment of the Court of Appeals, and remanded to that court for a determination of whether the warnings given to appellant substantially complied with the warnings required by Article 38.22.[2] On remand, the Court of Appeals held that the warnings were not in substantial compliance with Article 38.22, but that the erroneous admission of the statements did not affect a "substantial right" of appellant. *Nonn v. State,* 69 S.W.3d 590 (Tex.App.-Corpus Christi 2001). We granted review a second time to determine whether,

1. Unless otherwise indicated all future references to Articles refer to the Code of Criminal Procedure.

2. The version of Article 38.22 in effect at the time of the events in question read, in relevant part:

Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

[o]n remand, the appeals court reversibly erred in holding that appellant's substantial rights were not implicated by the erroneous juried admission of Nonn's "really strong confessional statement" taken as a result of custodial interrogation in another state.

Because the Court of Appeals did not perform the proper harm analysis, we will perform our own analysis and we will affirm.

## Facts:

On December 24th, 1994, Starr County Sheriff's investigator Homer Flores found the body of 56–year–old Eleanor Ginder, who had been reported missing several days earlier by her husband Carl. The Ginders were residents of San Juan, Texas. Ginder's body was found inside her 1990 Chevy van, which was parked in a county park in Rio Grande City, Texas. She had been bound and gagged, and tape had been placed over her face. She had also been beaten about the head, and stabbed ten times. Police found a bent and bloodstained kitchen knife in the glove compartment of the van, and a sawed-off shotgun inside a cabinet at the rear of the van. Ginder had been dead for several days when her body was found. The van was strewn with empty cardboard Wal–Mart boxes, which had at one time contained home electronics and bore the serial numbers of those electronics.

Ginder's credit card had been used after her disappearance, and records of those transactions led investigators to a Rio Grande City Wal Mart, where a young man and woman had purchased several television sets and other electronics whose serial numbers matched those on the boxes found in Ginder's van. The young woman signed Eleanor Ginder's name to the purchases. Pawn sale documents from Rio Grande City's only pawn shop revealed that the same electronics, bearing the same serial numbers, had been sold for cash at the shop on the same day. Appellant had used his own name and identification on those pawn sale documents. Noting that appellant's address was next door to the Ginders' residence, police went to that address, where the 19–year–old appellant lived with his parents.

Police described the knife found in the van to appellant's parents. His mother then produced a set of matching kitchen knives, one of which was missing. His parents informed police that appellant and a female, 16–year–old Marie Garcia Vega, were staying with relatives in Chicago. Descriptions of the suspects furnished by clerks in the Rio Grande City Wal–Mart and the pawn shop matched appellant and Vega. Officer Flores then obtained arrest warrants for appellant and Vega for kidnaping. He notified Chicago police, via teletype, that Texas police were seeking the pair on a kidnaping warrant, with murder charges pending. He furnished descriptions of both suspects, and the address of the relative in Chicago.

Chicago Police Detective Gregory Baiocchi arrested appellant and Vega in Chicago. They were taken to a Chicago police station, where they were questioned separately by police and prosecutors. Prior to questioning, Baiocchi advised appellant of his *Miranda* rights, and appellant indicated that he understood them, and wished to make a statement. Cook County Assistant State's Attorney Michael Falagario met with appellant, informed him that he was a prosecutor working with the police on the case, and again advised appellant of his *Miranda* rights. Appellant indicated that he understood, and agreed to make a statement, which would be summarized by Falagario in handwritten form. This statement, confessing to and describing the details of the crime, is the subject of this petition for review.

Testimony at trial established that Falagario sat with appellant in the interview room, asked him questions, and then wrote summaries of the answers provided on a pre-printed form. The form had spaces for essential information (time and location of the interview, name of suspect, names of those present, etc.), and a typed version of the *Miranda* warnings, with a line for the suspect to sign. After taking appellant's statement, Falagario testified that he asked appellant to read parts of it back to him, including the typed *Miranda* warnings. He then had appellant sign on the line under the warnings, and finished reading the statement to appellant. Appellant made minor corrections, which he initialed, and the statement was complete.

Appellant remained in custody in Chicago for approximately a month before he was brought back to Texas. When appellant arrived in Texas, Officer Flores took a videotaped statement, again documenting the commission of the crime. The videotape includes a reading and explanation of the warnings required by Article 38.22, and appellant's statement that he understood those warnings. A second videotape, made shortly thereafter, recorded appellant taking police to the location where the van and body were found.

**Proceedings Below:**

At a pre-trial suppression hearing, the defense argued for the suppression of the two videotaped statements. The State brought Officer Flores to testify to the circumstances surrounding the taking of those statements. Flores described the warnings given to appellant, and testified that appellant had indicated his understanding of the warnings, and had signed a waiver, which was introduced into evidence at the hearing. The defense called appellant, who testified that he had asked for an attorney before making the videotaped statements, and that the officers had re-sponded by implying that they would get him an attorney if he made a statement first, which he agreed to do. On cross-examination, appellant admitted that the warnings given to him when he was arrested in Chicago were "substantially the same" as those later given to him by Officer Flores. He also testified that he had requested an attorney in front of at least three police officers before giving the videotaped statement. The State called another police officer to testify as a rebuttal witness. This officer, who was also present during the videotaping, testified that he never heard appellant ask for an attorney.

The defense argued that the videotaped confession should be suppressed because it was obtained after appellant had invoked his right to counsel. Counsel also asserted that the taint of an illegally obtained confession would carry over under the "cat out of the bag" doctrine, rendering subsequent confessions inadmissible. At this pre-trial hearing, the defense was referring only to the two videotaped statements made by appellant in Texas and did not argue that the Chicago confession had tainted the Texas statements. The trial court denied the motion to suppress the videotaped statements.

At trial the State presented numerous witnesses, including the victim's husband, various employees of the businesses in Rio Grande City where appellant and Vega used Mrs. Ginder's credit card, and employees of the pawn shop where the pair pawned the electronics. The State also called several police investigators, and the pathologist who conducted the autopsy, all of whom testified about aspects of the physical evidence in the case. Officer Flores testified about his investigation of the crime scene, and described how the credit card records led police to appellant's home. He described his encounter with

appellant's parents, and the discovery of the set of kitchen knives matching the knife found in the van. He also recounted how he learned from appellant's parents that appellant and Vega were in Chicago, and learned the address at which they were staying. Flores then testified that he obtained warrants for the pair's arrest, and that he teletyped Chicago Police with the address and warrants. He described the apprehension of the pair in Chicago, and their eventual transport back to Texas.

Officer Flores testified about the circumstances surrounding the giving of the two videotaped statements in Texas, and the State offered the first videotape into evidence. At that point, the defense objected, and requested a hearing outside the presence of the jury on the issue of voluntariness. This hearing was essentially a re-argument of the pre-trial hearing. The trial court again ruled that the videotape was admissible.

After the videotaped statement had been admitted and published to the jury, the State asked for a conference, outside the presence of the jury. The State indicated that they intended to call witnesses from Chicago to testify to the taking of appellant's Chicago statement. At this time, the defense objected to the admission of the Chicago statement, arguing that the statement taken by the Chicago police did not comply with the requirements of Article 38.22. A hearing was held, and the State called Detective Baiocchi to testify to the circumstances surrounding the taking of the Chicago statement. Baiocchi described appellant's arrest, and testified that he orally administered *Miranda*

warnings, and that appellant stated that he understood his rights, and was willing to talk to police.

Assistant State's Attorney Michael Falagario then testified that he met with appellant at the police station, identified himself, and advised appellant of his *Miranda* rights again. Falagario also stated that he advised appellant that he could terminate the interview at any time.[3] He went on to testify about the taking of appellant's statement. When asked whether he was aware, at the time, of the differences between Illinois law and Texas law, he responded that he was not.

The State argued that the statement should be admitted because the Chicago police were acting according to Illinois procedure, in compliance with the requirements of the U.S. Constitution, and *Miranda*, and were unaware of the additional requirements of Article 38.22. Moreover, the State argued that the Chicago police were not acting as agents for Texas law enforcement when they took appellant's statement. The defense argued that the Chicago police had no reason to take the statement unless they were acting as agents of Texas law enforcement. Therefore, the statement should not be admitted, because it did not comply strictly with the requirements of Article 38.22. The court disagreed and ruled the statement admissible.

After the hearing, appellant's written Chicago statement was introduced into evidence, and published to the jury. The State rested shortly thereafter. The defense moved for an instructed verdict, which was denied. Defense then waived opening statement, rested, and closed

---

**3.** This particular warning, which was not part of the *Miranda* warnings printed on the face of the statement taken from appellant in Chicago, is one of those required by Article 38.22 to appear on the face of any statement result-

ing from custodial interrogation before such a statement can be admitted as evidence against a defendant in a criminal trial. *See* Article 38.22(a)(5) in note 2, *supra*.

without presenting evidence. The jury found appellant guilty, and he received an automatic life sentence.

On direct appeal, appellant argued again that the Chicago statement should have been suppressed because the warning that he could terminate the interview at any time did not appear on the face of the statement, as required by Article 38.22. *Nonn v. State*, 13 S.W.3d 434 (Tex.App.-Corpus Christi 2000). The Court of Appeals looked to a case in which this Court held that *Miranda* did not generally apply to confessions obtained by foreign officials. *Alvarado v. State*, 853 S.W.2d 17 (Tex. Crim.App.1993). In *Alvarado*, this Court also noted two exceptions to that general rule. A confession obtained by foreign officials will be excluded if the circumstances surrounding the confession "shock the conscience" of an American court. *Id.* at 21–22. The confession will also be excluded if U.S. law-enforcement officials participate in the foreign interrogation, or if the foreign authorities are acting as agents for U.S. law enforcement. *Id.* at 22. The Court of Appeals in this case applied *Alvarado* by analogy, holding that the circumstances of this case did not shock the conscience, and that the Chicago police were not acting as agents for Texas law enforcement. *Nonn v. State*, 13 S.W.3d at 439–440. The Court of Appeals affirmed the trial court's judgment. *Id.* at 444.

On original submission to this Court, we noted that we had recently held, in *Davidson v. State*, 25 S.W.3d 183, 185–86 (Tex. Crim.App.2000), that Article 38.22 is a procedural evidentiary rule. Under basic conflict-of-law principles, the law of the forum in which the judicial proceeding is held governs the admissibility of evidence. Therefore, we held that the law of the State of Texas, in this case Article 38.22, governs the admissibility of appellant's

confession at trial in Texas. *Nonn v. State*, 41 S.W.3d 677 (Tex.Crim.App.2001). We explained that "the relevant inquiry in this case is whether the oral statements made by appellant as a result of custodial interrogation were obtained in compliance with the dictates of art. 38.22, rather than the various issues of public policy and agency addressed by the court of appeals." *Id.* at 679.

This Court also noted that the portion of Article 38.22 pertaining to oral statements which are not electronically recorded, unlike the portion governing electronic recordings, does not contain an express legislative mandate of "strict compliance." *Id.* at 679. We cited several cases in which we had previously held that such oral statements need only "substantially comply" with the warnings set out in Article 38.22. *Id., citing Cockrell v. State*, 933 S.W.2d 73, 90–91 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997); *Sosa v. State*, 769 S.W.2d 909, 915–916 (Tex.Crim.App.1989); *Bennett v. State*, 766 S.W.2d 227, 230–231 (Tex.Crim.App.1989), *cert. denied*, 492 U.S. 911, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989). We therefore sustained appellant's ground for review, and remanded to the Court of Appeals to determine whether the warnings given to appellant substantially complied with the requirements of Article 38.22. *Nonn v. State*, 41 S.W.3d at 679.

On remand, the Court of Appeals held that the warnings given to appellant in Chicago failed to substantially comply with Article 38.22, because one of the warnings was not given in writing. *Nonn v. State*, 69 S.W.3d 590 (Tex.App.-Corpus Christi 2001). Having determined that the trial court erred in admitting the statements, the Court of Appeals then held that the erroneous admission nevertheless did not constitute reversible error. *Id.* at 593. The court cited to *Davidson* for the propo-

sition that compliance with Article 38.22 is not a constitutional issue, and therefore is subject to harm analysis under Texas Rule of Appellate Procedure 44.2(b). Under Rule 44.2(b), the error will be reversible only if it affected a substantial right of the defendant, *i.e.*, if the error had a substantial or injurious effect on the jury's verdict. *Nonn v. State*, 69 S.W.3d at 593, *citing Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim.App.2000). The Court of Appeals held:

> [W]hen, as here, a statement is taken from a defendant as a result of custodial interrogation in another state, and the evidence is undisputed that the *Miranda* warnings were given to the defendant in writing and the additional warning provided by article 38.22, that the defendant was entitled to stop the interrogation at any time, was given orally, the substantial rights of the defendant are not implicated.

*Nonn v. State*, 69 S.W.3d at 593. The Court of Appeals therefore affirmed the trial court's judgment. We granted review to determine whether the Court of Appeals' holding on remand was erroneous.

**Arguments of the parties on petition for discretionary review:**

In his brief, appellant contends that the Court of Appeals reversibly erred in its harm analysis. He points to the State's "repeated" references to the contents of the Chicago statement during trial as an indication that the admission of the statement had a substantial, prejudicial impact on the jury's verdict. Appellant also argues that the Court of Appeals' finding that the admission of appellant's statement was harmless, while finding the admission of the written statements of his co-defendant Marie Garcia Vega harmful, is a violation of federal and state equal protection guarantees. *See Vega v. State*, 32 S.W.3d 897, 905–906 (Tex.App.-Corpus Christi 2000), *reversed and remanded*, 84 S.W.3d 613 (Tex.Crim.App.2002).

The State counters that the erroneous admission of appellant's Chicago statement did not affect a substantial right. In support of this argument, the State points to the two subsequent statements made to Texas authorities by appellant, which contained substantially the same information as the Chicago statement. The State emphasizes that these other statements were properly admitted at trial. In addition, the State denies that great emphasis was put on the Chicago statement at trial. Even if the trial court had excluded the Chicago statement, the State speculates that the court would likely have admitted testimony about oral statements made by appellant to the Chicago law enforcement officers. Moreover, the State contends that the purpose underlying Article 38.22 was served by the oral warning appellant received, and that the statement should therefore be admitted. The State also argues that Vega's case is not analogous to appellant's case because she, unlike appellant, never gave another statement after returning to Texas. Finally, the State argues that the probable "collateral implications" of the erroneous admission, and the weight accorded to the statement by the jury are "minimal," and that declaring the error harmless would be unlikely to encourage the State to repeat the error.

**Standard of review:**

■ When this Court held that Article 38.22 was a "procedural evidentiary" rule, we explained:

> [A]rticle 38.22 merely prescribes the various requirements that must be satisfied before a statement made by an accused as a result of custodial interrogation will be admitted against him/her at trial. That such requirements are not met does not mean that the statement

was necessarily obtained as a result of any legal or constitutional violation ... *Davidson*, 25 S.W.3d at 186. As the Court of Appeals in this case correctly noted on remand, appellant's statement was not taken in violation of *Miranda. Nonn*, 69 S.W.3d at 593. Therefore, the erroneous admission of that statement is appropriately characterized as a "non-constitutional" error.

Texas Rule of Appellate Procedure 44.2(b) defines the harm analysis to be used when considering "non-constitutional" errors.[4] We have held that, in applying Rule 44.2(b), "an appellate court need only determine whether or not the error affected a substantial right of the defendant. To make this determination, appellate courts must decide whether the error had a substantial or injurious affect (sic) on the jury verdict." *Llamas v. State*, 12 S.W.3d 469, 471 & n. 2 (Tex.Crim.App.2000). We elaborated on this process in *Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000):

> In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court might also consider the jury instruction given by the trial judge, the State's theory and any de-fensive theories, closing arguments and even voir dire, if material to appellant's claim.

*Id., citing Llamas*, 12 S.W.3d at 471.

■ In this case, the Court of Appeals on remand held that the erroneous admission of appellant's Chicago statement did not affect a substantial right. *Nonn v. State*, 69 S.W.3d at 593. Although the court cited *Morales*, the language of the holding indicates that the court performed the harm analysis incorrectly. Rather than examining the other evidence and arguments presented at trial to determine whether the erroneous admission might have affected the jury verdict, the Court of Appeals focused on the totality of circumstances surrounding the taking of the statement. The court essentially determined that the statement was voluntary despite the missing warning, and thus that the substantial rights of appellant were not implicated. *Id.* Because the Court of Appeals did not perform a complete harm analysis, we will do so now.

**Equal protection:**

■ First, we will address appellant's contention that the Court of Appeals' holding of harmless error in the admission of his statement, while holding that the admission of his co-defendant's statement was reversible error, implicates equal protection issues. Under Article I, Section 3 of the Texas Constitution, and the Fourteenth Amendment to the U.S. Constitution, all persons similarly situated are guaranteed equal protection under the

4. The full text of Rule 44.2 is as follows:
44.2 Reversible Error in Criminal Cases.
(a) Constitutional error.
If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.
(b) Other errors.
Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

laws of this State and of the United States. *Vasquez v. State*, 739 S.W.2d 37, 43 (Tex. Crim.App.1987). In this case, appellant's argument must fail because he and his co-defendant, Marie Garcia Vega, were not "similarly situated." Vega, unlike appellant, was a juvenile at the time of her arrest. The admissibility of her statement was governed by the Texas Family Code, rather than by the Texas Code of Criminal Procedure. *Vega v. State*, 84 S.W.3d 613 (Tex.Crim.App.2002). Unlike appellant, Vega did not make any subsequent statements to police in Texas. Therefore, her Chicago statement played a much more important role in the State's evidence against her at trial. *Vega v. State*, 32 S.W.3d 897, 906 (Tex.App.-Corpus Christi 2000), *rev'd by* 84 S.W.3d 613 (Tex.Crim. App.2002). For these reasons, we reject appellant's equal protection argument.

**Error analysis:**

Appellant argues that the erroneous admission of his Chicago statement could have adversely affected the jury's verdict because the State emphasized the statement during various stages of the trial, beginning with voir dire and continuing through closing arguments. Arguing that the videotaped confessions given to Texas law enforcement were fruits of the Chicago statement, and thus should not have been admitted, appellant asserts that the remaining evidence of his guilt was "tenuous."

In *Griffin v. State*, 765 S.W.2d 422 (Tex. Crim.App.1989), this Court addressed the validity of the "cat out of the bag" theory. That theory posits that once a confession is obtained illegally, any subsequent statements may be tainted by the illegality infecting the first, inadmissible confession. *Griffin* involved a juvenile who was questioned about her involvement in a murder, and who made two incriminating state-ments. The first of those statements was held inadmissible because it did not meet the requisites of the section of the Texas Family Code governing admissibility of oral statements taken from juveniles. *Id.* at 425. Although the second statement was taken in accordance with the Family Code section, the juvenile was not aware that the first statement could not be used against her at trial when she made the second statement. Therefore the Court of Appeals held that the second confession was not voluntary, and was therefore inadmissible under the "cat out of the bag" theory. *Id.* However, on discretionary review this Court reversed the judgment of the Court of Appeals, pointing out that there was no evidence that the first statement, although inadmissible, was actually involuntary. Therefore, the warnings given before the subsequent statement sufficed to remove the conditions that precluded admission of the first statement. *Id.* at 431; *see also Oregon v. Elstad*, 470 U.S. 298, 318, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) ("a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings.")

This case presents a situation much like that in *Griffin* and *Elstad*. Although appellant's Chicago statement did not conform to the requirements of Article 38.22, it did meet the criteria of *Miranda*, and appellant produced no evidence that the statement was not voluntary. Although appellant was not aware that the Chicago statement could not be used against him, there is no indication that the making of that statement influenced appellant's decision to make further statements to Texas law enforcement authorities a month later. The Texas statements, which *did* conform to the requirements of Article 38.22, bear no indicia of having been coerced. There-

fore, the Texas statements would, in all likelihood, have been admissible at trial even if the Chicago statement had been ruled inadmissible.

Because the Texas statements contained much of the same information as the Chicago statement, the erroneous admission of the Chicago statement may not have had any significantly adverse effect on the jury's verdict. *See Sterling v. State,* 800 S.W.2d 513, 520 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991); *Daniel v. State,* 668 S.W.2d 390, 392 (Tex.Crim.App.1984).

Appellant argues that the State's "repeated references" to the contents of the Chicago statement at trial are probative of its importance to the State's case, and thus of the harm resulting from its erroneous admission. A review of the testimony and arguments at trial, however, reveals few specific references to the Chicago statement. Much of the evidence used against appellant at trial was obtained before appellant was arrested in Chicago, and thus is not traceable to the improperly admitted statement. The credit card receipts and pawn documents which originally led police to appellant, the knife used in the murder and the matching kitchen knives from appellant's home, the testimony of the store employees in Rio Grande City identifying appellant and Vega—all these vital pieces of the State's case were obtained independently of the Chicago statement.

We have held that properly admitted evidence of guilt is one factor to be considered when performing a harm analysis under Rule 44.2(b). *Motilla v. State,* 78 S.W.3d 352 (Tex.Crim.App.2002). Another relevant factor is "the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* at 359, *quoting Morales v. State,* 32 S.W.3d 862, 867 (Tex. Crim.App.2000). Appellant's Chicago statement was admitted at trial only after the jury had already heard the testimony regarding physical evidence, and had viewed the videotaped Texas statements. The Chicago statement, although powerful evidence by itself, contained essentially the same information as the Texas statements. The impact of the erroneously admitted statement when considered in connection with the videotaped statements was likely not significant. Even if the Texas statements had not been admitted, the Chicago statement would have added little to the circumstantial evidence presented by the State at trial. For these reasons, we conclude that the erroneous admission of appellant's statement to Chicago law enforcement officers was harmless error. We therefore affirm the judgment of the Court of Appeals.

JOHNSON, J., concurred.