TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00625-CR






Charles Patterson, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT

NO. 3013781, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Charles Patterson appeals from his conviction for indecency with a child by contact
following a jury trial. See Tex. Pen. Code Ann. § 21.11 (West 2003). Patterson complains that the 
district court improperly excluded and admitted various evidence. We will affirm the judgment.


BACKGROUND



 On or about August 15, 2001, K.T., who was six years old at the time, was with her
family visiting Patterson, a family friend, at Patterson's apartment. Prior to the incident, K.T. and
her mother had visited Patterson's apartment on about five other occasions. (1) While at the apartment,
K.T.'s mother borrowed Patterson's car to go to the store, leaving K.T., along with her five-year-old
sister and three-year-old brother, with Patterson and another adult. While the rest of the group was
in a bedroom watching television, Patterson sexually abused K.T. while the two were alone on the
living room couch.

 After this incident, K.T.'s mother noticed increased anger in the child and a general
change in her attitude. Chad Rockowitz, K.T.'s first grade teacher, also noticed that K.T. had begun
acting unusually withdrawn from the other children at school. After talking with K.T. and noting
that she "recoiled" in response to his statement that "if she was herself people would love her for
who she is," Rockowitz consulted with the school's principal and counselor, then reported K.T.'s
behavior to Child Protective Services (CPS). Teri Reynolds, a CPS investigator, interviewed K.T.
at her school. After Reynolds and K.T. discussed the difference between appropriate and
inappropriate touching, K.T. disclosed the sexual abuse by Patterson. Reynolds informed K.T.'s
mother of K.T.'s account and arranged an interview with the Children's Advocacy Center. (2) A
criminal investigation into Patterson's conduct began shortly thereafter. The State subsequently
indicted Patterson on one count of aggravated sexual assault of a child and one count of indecency
with a child by contact.

 At the jury trial, Dr. William Carter testified for the State that K.T.'s change in
behavior was consistent with a reaction to a stressor like sexual abuse. During cross-examination,
however, Dr. Carter admitted that K.T.'s change in behavior might also have been the result of a
traumatic event other than sexual abuse, such as being homeless and moving from shelter to shelter. 
In fact, K.T.'s mother testified that, around the time of the incident, she and her children had lived
at the Salvation Army for approximately sixty days, then moved to SafePlace. Patterson then tried
to admit evidence of alternative causes of stress that could have explained K.T.'s behavior. 
Specifically, Patterson attempted to introduce three CPS reports documenting poor living conditions
of K.T. and her family and alleged neglect by K.T.'s mother. The State objected on the basis of
relevance to the admission of this "uncharged, extraneous, [and] alleged misconduct," which the
district court sustained.

 Dr. Beth Nauert, a pediatrician in private practice and medical director of the
Children's Assessment Program, (3) also testified for the State at trial. After the Austin Police
Department contacted her, Dr. Nauert conducted a physical examination of K.T., and she testified
regarding what K.T. told her about the offense. Patterson objected to Dr. Nauert's testimony on the
basis that it included an inadmissible prior consistent statement of K.T.'s. See Tex. R. Evid. 613. 
The district court overruled this objection. Dr. Nauert concluded that, despite the absence of
physical evidence of sexual abuse, the evidence was not inconsistent with sexual abuse.

 The jury acquitted Patterson of aggravated sexual assault but convicted him of
indecency with a child by contact. Taking into account Patterson's prior convictions, the jury
assessed punishment at sixteen years confinement and a $2,000 fine. The district court entered
judgment on the verdict. This appeal followed.


DISCUSSION


 Patterson brings two issues on appeal. First, he asserts that the district court erred in
excluding relevant evidence of alternative traumatic events that he contends could have explained
K.T.'s change in behavior. Second, he argues that the district court erred in permitting K.T.'s prior
consistent statement to Dr. Nauert regarding the abuse. 


Standard of review

 We review the admission and exclusion of evidence for an abuse of discretion and
will not reverse the decision absent a clear abuse of discretion. See Apolinar v. State, 155 S.W.3d
184, 186 (Tex. Crim. App. 2005). A court abuses its discretion when its ruling is outside the zone
of reasonable disagreement. Id.; see Green v. State, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996);
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Furthermore, even if a trial
court abuses its discretion, the judgment will not be reversed if the error was harmless. Tex. R. App.
P. 44.2(b); McClellan v. State, 143 S.W.3d 395, 401 (Tex. App.--Austin 2004, no pet.); see
Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). A non-constitutional error is
harmless if it does not affect the defendant's substantial rights. See Tex. R. App. P. 44.2(b). A
substantial right is affected when the error had a "substantial and injurious effect on the jury's
verdict." In re J.H., 150 S.W.3d 477, 486 (Tex. App.--Austin, 2004, pet. denied) (quoting Morales
v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)) (internal citation omitted). In assessing the
likelihood that the jury's decision was adversely affected by an error, we consider everything in the
record, including any testimony or physical evidence admitted for the jury's consideration, the nature
of the evidence supporting the verdict, the character of the alleged error, and how it might be
considered in connection with other evidence in the case. Nonn v. State, 117 S.W.3d 874, 881 (Tex.
Crim. App. 2003).


Exclusion of evidence of alternative traumatic events

 At trial, the State presented evidence of K.T.'s change in behavior as proof of
Patterson's sexual abuse. In his first issue, Patterson argues that the district court erred in excluding
relevant evidence of alternative traumatic events described in CPS reports that he contends could
have explained K.T.'s change in behavior. See Tex. R. Evid. 401, 402. Dr. William Carter, a
psychologist for the Waco Children's Advocacy Center, testified for the State that the behavioral
changes K.T. exhibited after the incident may be symptoms of experiencing a stressful or traumatic
situation like sexual abuse. During cross-examination, Dr. Carter admitted that K.T.'s change in
behavior might also have been the result of a traumatic event other than sexual abuse, such as being
homeless and moving from shelter to shelter. Furthermore, Dr. Carter admitted that the symptoms
an abused child might manifest are indistinguishable between children who have suffered sexual
abuse and those who have suffered other sources of stress.

 Seizing upon Dr. Carter's admissions that traumatic events other than sexual abuse
might have accounted for K.T.'s changed behavior, Patterson attempted to introduce three CPS
records documenting the agency's investigations regarding K.T.'s mother's alleged neglectful
supervision and physical neglect of her children. The district court excluded all three exhibits.

 The district court excluded two of the three CPS records as irrelevant because they
involved events that occurred after K.T.'s change in behavior. One exhibit involved alleged
misconduct that occurred on January 4, 2002, almost five months after K.T.'s change in behavior
and abuse by Patterson. The other exhibit related to alleged misconduct that occurred on June 17,
2002, almost a year after K.T.'s change in behavior. We find that the district court did not abuse its
discretion in excluding evidence of alleged misconduct that occurred months after the abuse and
change in behavior.

 The other exhibit excluded by the district court, however, related to events that had
occurred a few months before the August 15, 2001 incident. This exhibit, a report of a CPS
investigation opened on May 29, 2001, recounted that K.T.'s mother had been leaving her and her
siblings at home unattended for some amount of time on a daily basis and that there had been no
running water in their home for the past year, no working toilets at the time of inspection, and that
the toilets emanated a strong smell of sewage. We conclude that the district court did not abuse its
discretion in excluding this evidence. While the allegations in the CPS report detailed poor living
conditions, the district court did not abuse its discretion in distinguishing these allegations from the
sort of acute abuse or trauma that Dr. Carter testified could explain K.T.'s change in behavior.

 In any event, even assuming that this evidence or the other CPS reports should have
been admitted, any error from their exclusion was harmless. See Tex. R. App. P. 44.2(b). The jury
heard testimony from K.T. regarding her allegations against Patterson, and Reynolds recounted what
K.T. told her during the interview when K.T. made her original outcry. (4) We have considered
everything in the record, and cannot conclude that the district court's exclusion of the three exhibits
had a substantial and injurious effect on the jury's verdict. See Nonn, 117 S.W.3d at 881; Morales,
32 S.W.3d at 867; Llamas v. State, 12 S.W.3d 469, 471 & n.2 (Tex. Crim. App. 2000). We overrule
Patterson's first issue.


Admission of K.T.'s prior statements

 In his second issue, Patterson argues that the district court erred in permitting Dr. Beth
Nauert to testify, over Patterson's objection, regarding what K.T. told her about the offense. 
Patterson argues that the testimony should be excluded as an inadmissible prior consistent statement
because it was not offered to rebut an express or implied charge against the declarant of recent
fabrication or improper influence or motive. See Tex. R. Evid. 613(c), 801(e)(1)(B). (5) The State
argues that the testimony was admissible or, alternatively, that any error in its admission was
harmless.

 We will not reverse the decision of the district court if there is any theory of law that
would allow the testimony, regardless of whether the district court actually used that theory when
reaching its conclusion. See McDuff v. State, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997) (citing
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)). The testimony was admissible
under the exception to Rule 613. Although prior consistent statements are generally not admissible
unless they fall within Rule 801(e)(1)(B), Dr. Nauert's testimony falls within that exception because
it was consistent with K.T.'s testimony and was offered to rebut an implied charge of recent
fabrication or improper influence or motive. See Tex. R. Evid. 613, 801(e)(1)(B).

 K.T. testified before Dr. Nauert did. On cross-examination by Patterson's attorney,
K.T. admitted that she sometimes needs help from other people to correctly remember certain facts. 
Drawing on this testimony, Patterson insinuated that those who helped K.T. to remember also told
her what to say, suggesting that K.T.'s testimony had been fabricated or improperly influenced by
others. Patterson thereby placed in issue K.T.'s credibility and the possibility of fabrication or
improper influence. Furthermore, after K.T. testified but before Dr. Nauert testified, Patterson led
Dr. Carter through a hypothetical regarding a parent who is familiar with the CPS process and
manipulates the child into reporting a false allegation of sexual abuse. Against this backdrop, Dr.
Nauert's testimony was admissible as a prior consistent statement because it rebutted Patterson's
charge of fabrication or improper influence. The district court did not abuse its discretion in
allowing Dr. Nauert to testify regarding what K.T. told her about the offense. See Apolinar, 155
S.W.3d at 186; Green, 934 S.W.2d at 102; Montgomery, 810 S.W.2d at 391. 

 Furthermore, any error in the admission of this testimony was harmless. See Tex. R.
App. P. 44.2(b). Again, K.T. testified about the abuse herself, and the CPS social worker testified
about the original outcry. Other witnesses testified about K.T.'s change in behavior. As Patterson
correctly asserts in his brief, the evidence and testimony in the case were hotly contested. We cannot
say that Dr. Nauert's confirmation that K.T. had alleged abuse by Patterson made any difference
whatsoever to the jury. Allowing Dr. Nauert to testify to what K.T. told her regarding the sexual
abuse was harmless. We overrule Patterson's second issue.


CONCLUSION


 We affirm the judgment of the district court



 

 Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: July 8, 2005

Do Not Publish

1. The record is unclear regarding the purpose of the family's August 15 visit, but the record
indicates that they were living in a shelter at the time, as discussed below, and would go to
Patterson's apartment to relax away from the shelter. 
2. The Children's Advocacy Center, now known as the Center for Child Protection, provides
a homelike environment where children who have reported abuse can go for evaluation, crisis
intervention, evidence gathering, and counseling. At the Center, child abuse allegations are
investigated by a team of personnel from CPS, Austin Children's Hospital, local law enforcement,
and the Travis County District Attorney's Office.
3. The Children's Assessment Program is a part-time clinic that evaluates physically or
sexually abused children. It is associated with the Children's Advocacy Center.
4. The judge admitted Reynolds's testimony regarding K.T.'s allegations as an exception to
the hearsay rule because K.T. made her original outcry during Reynolds's interview. See Tex. R.
Evid. 802; Tex. Code Crim. Proc. art. 38.072 (West 2005).
5. Patterson specifically denied that he was asserting a hearsay objection, acknowledging that
the testimony would fall within the exception for medical diagnoses. See Tex. R. Evid. 803(4).