•           •           • 
 • • •





OPINION

No. 04-08-00695-CR

Frances Ann LOPEZ,
Appellant

v.

STATE of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-9282
Honorable Maria Teresa Herr, Judge Presiding
 
Opinion by:    Steven C. Hilbig, Justice
 
Sitting:            Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed: February 3, 2010

AFFIRMED
            Frances Ann Lopez was sentenced to thirty years in prison after a jury convicted her of
murdering her husband. Lopez appeals the judgment, complaining the trial court erred in:
(1) denying her motion to suppress statements she made to investigators; (2) ruling on several
evidentiary matters; and (3) failing to grant a mistrial when the prosecutor commented during closing
argument on her failure to testify. We affirm the judgment of the trial court.
Background
            On January 8, 2006, Eloy Hernandez Jr. was found dead in his home by Lopez and her
daughter. Bexar County Deputy Sheriff, George Barrera, Jr., testified Lopez told him she left her
home the morning of January 7, 2006 and did not return until 1:40 a.m. on January 8, 2006. Lopez
told Barrera that when she arrived home she noticed the front door open and after entering she found
her husband’s body on their bed. She then yelled to her daughter to call the Bexar County Sheriff’s
office to report the death. 
            Sergeant Martin Molina also spoke with Lopez and asked if she knew of anyone who might
have wanted to harm her husband. Lopez told Sergeant Molina that Hernandez had a girlfriend who
had made threatening comments toward Lopez and her family. Lopez agreed to provide a statement,
and she and her daughter rode with Lopez’s sister to the sheriff’s office. 
            At the sheriff’s office, Lopez’s sister and daughter were seated in a lobby area, and Lopez
was taken into an office in the criminal investigations section. Detective David Davila, a homicide
investigator with the sheriff’s office, took Lopez’s statement by having her sit next to him so she
could see the screen as he typed the information she provided. Lopez made corrections to the
statement as it was being typed. At one point during this process, Lopez agreed to undergo a gunshot
residue (GSR) test to determine if she had recently fired a gun. According to Detective Davila,
Lopez claimed to have fired her pistol earlier in the week. Detective Davila testified he left the room
after the statement was completed to allow Lopez time to review the statement before signing it. 
Detective Davila discussed the statement with Sergeant Molina and told him he was concerned about
several inconsistencies in Lopez’s statement. Detective Davila told Sergeant Molina that if Lopez
signed the statement, he intended to advise her of her “Miranda” rights. 
            Detective Davila returned to the office and asked Lopez if any part of the statement needed
to be changed. According to Detective Davila, Lopez commented that the statement made her “look
bad,” but when asked if she wanted to change anything she declined and signed the statement.


 
Detective Davila told Lopez he was going to advise her of her rights because there were
inconsistencies in her statement that required further questioning. Detective Davila testified Lopez
began to cry while he was reading her rights from a card. However, she signed the card, indicating
she understood her rights against self-incrimination. Detective Davila then turned and looked at
Lopez and said “You shot him, right?” Detective Davila testified Lopez nodded in agreement. 
Detective Davila asked her if she wanted to tell him about it, and Lopez said “No, you’ll put me in
jail.” Lopez was then placed under arrest. Sergeant Molina testified he witnessed Detective Davila
reading Lopez her rights and Lopez nodding her head when asked if she shot her husband. Sergeant
Molina also testified he heard Detective Davila tell Lopez she was going to jail after she admitted
shooting her husband. 
            Lopez then told Detective Davila her husband had beat her, and she agreed to write a list of
witnesses who could testify about the abuse. Detective Davila left the room and Sergeant Molina
continued to talk with Lopez, who then agreed to give a second statement. Sergeant Molina went
over her rights again and she provided a second statement in the same manner as the first. The
second statement contains on the face of the document the warnings required by article 38.22. 
Although Lopez never admitted in her first statement to being involved in her husband’s death, in
her second statement she stated she did not remember “how I shot him.” Lopez also claimed in her
second statement that her husband had abused her the morning of the shooting and abuse had
occurred in the past. She also provided a handwritten list of people who witnessed the abuse.
            Detective Davila testified Lopez acknowledged each of her rights when he read them to her. 
Sergeant Molina testified Lopez understood her rights and that she voluntarily made her second
written statement. 
Discussion
Motion to Suppress
            In separate points of error, Lopez asserts the trial court erred in denying her motion to
suppress her second written statement, Detective Davila’s testimony that she nodded her head in
response to the question whether she shot her husband, and the handwritten witness list. Lopez
argues the admission of this evidence violated the Constitution of the United States and Texas law. 
In particular, Lopez contends: the second written statement was involuntary because of coercive
measures used by the deputies; the “head nod” took place while she was in custody and failed to
comply with article 38.22 of the Texas Code of Criminal Procedure; and the witness list was created
after she had been formally arrested and did not comply with the warning requirements of article
38.22. 
            We review the trial court’s ruling on a motion to suppress for abuse of discretion, using a
bifurcated standard. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We view the
record in the light most favorable to the trial court’s ruling and will reverse only if the ruling is
outside the zone of reasonable disagreement. Id. We give almost total deference to the trial court’s
findings of historical fact supported by the record and to mixed questions of law and fact that turn
on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997). We review de novo the trial court’s determination of the law and its application of the law
to facts that do not turn upon an evaluation of credibility and demeanor. Id. When the trial court has
not made a finding on a relevant fact, we imply the finding that supports the trial court’s ruling, so
long as it finds some support in the record. State v. Kelly, 204 S.W.3d 808, 818-19 (Tex. Crim. App.
2006). We will uphold the trial court’s ruling if it is reasonably supported by the record and is correct
under any theory of the law applicable to the case. Dixon, 206 S.W.3d at 590.
            At the suppression hearing, Sergeant Molina and Detective Davila testified to the facts set
out above. Lopez testified at the hearing that she voluntarily went to the sheriff’s office to provide
a statement and did not believe she was under arrest. She also testified she agreed to undergo the
GSR test. However, she contradicted the deputies’ testimony, stating Detective Davila told her she
would be placed under arrest as he read her the Miranda rights. She also testified she thought she was
under arrest when her rights were read. Lopez denied making any indication that she shot her
husband.
            After the hearing, the trial court found: (1) the testimony of the deputies was credible; (2)
Lopez voluntarily went to the sheriff’s office; (3) after giving the first statement, Lopez became a
suspect and her Miranda rights were read to her; (4) Lopez’s second written statement was
voluntarily made and complied with the requirements of article 38.22; (5) the list of witnesses was
obtained “in the due course of taking the [second] statement;” (6) there was substantial compliance
with article 38.22 concerning the list of witnesses; and (7) the “head nod” was admissible. Neither
party requested any additional findings of fact or conclusions of law. See Tex. Code Crim. Proc.
art. 38.22 § 6 (Vernon 2007)(trial court must make findings of fact and conclusions of law
concerning admissibility of defendant’s statements when questions of voluntariness are raised).
Head Nod
            Lopez contends the trial court erred by refusing to suppress evidence that she nodded her
head affirmatively after Detective Davila stated, “You shot him, right?” Lopez claims the head nod
occurred while she was in custody and did not comply with the recording requirements of article
38.22, section 3, of the Code of Criminal Procedure. The requirements of article 38.22, section 3
are triggered only by custodial interrogations. See Nguyen v. State, 292 S.W.3d 671, 676-77 (Tex.
Crim. App. 2009). If Lopez was not in custody at the time of the head nod, then article 38.22 does
not apply. Herrera v. State, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). 
            Custody for purposes of article 38.22 occurs in one of two ways: (1) when an individual is
formally arrested, or (2) when an individual’s freedom of movement has been restrained to the
degree associated with a formal arrest. Nguyen, 292 S.W.3d at 677; “[B]eing the ‘focus’ of an
investigation does not necessarily render a person ‘in custody’ for purposes of receiving Miranda
warnings or those required under article 38.22 of the Code of Criminal Procedure.” Gardner v.
State, No. AP-75,582, 2009 WL 3365652 * 9 (Tex. Crim. App. October 21, 2009). A person is in
custody only if, under the circumstances, “a reasonable person would believe that his freedom of
movement was restrained to the degree associated with a formal arrest.” Herrera, 241 S.W.3d at
525.
            If Lopez was not in custody, then evidence of her affirmative head nod was admissible. The
trial court did not make an explicit finding that Lopez was not in custody at the time of the
affirmative head nod; however, the record supports such an implicit finding. Both Sergeant Molina
and Detective Davila testified the affirmative head nod was in response to the question asked by
Detective Davila. Although the question took place after Lopez was read her Miranda rights, both
deputies testified Lopez was still free to leave because her status did not change until after she
nodded her head, admitting she shot her husband. The court found the deputies’ testimony credible,
and Lopez admitted she voluntarily went to the sheriff’s office. We defer to the trial court on the
credibility and demeanor of the witnesses, and hold the evidence supports the trial court’s implicit
determination that Lopez was not in custody when she nodded her head. Even though Lopez
testified she did not feel free to leave once the Miranda rights were administered, the trial court
apparently did not credit this testimony in the face of the deputies’ testimony concerning the
circumstances surrounding the statement. The trial court did not abuse its discretion in admitting
testimony of the affirmative head nod.
Second Written Statement
            Lopez contends her second written statement should have been suppressed because it was
involuntary and resulted from “overbearing” and coercive police actions. To support her
contentions, Lopez points to her testimony during the suppression hearing that: (1) Sergeant Molina
promised to let her see her son after she gave the second statement; (2) Sergeant Molina told her she
needed to tell the truth or she would not see her children again; and (3) the deputies used
psychological ploys involving her claim of being an abused spouse to overcome her will. However,
Sergeant Molina denied promising Lopez she would see her son if she signed the statement. He
testified about the circumstances surrounding the taking of the statement, indicating it was not done
in a coercive manner. Deferring to the trial judge’s credibility determinations supported by the
record, we hold the trial court did not abuse its discretion in finding the statement was voluntary.
Witness List
            Lopez argues the handwritten witness list was a custodial statement that did not comply with
article 38.22, section 2, of the Texas Code of Criminal Procedure because no warnings appeared on
the face of the document. The State apparently concedes Lopez wrote the witness list while in
custody, but argues the list was admissible because it substantially complied with requirements of
article 38.22, section 2. Written statements that do not contain the exact warnings required by article
38.22 may be admissible if the State can demonstrate substantial compliance with article 38.22. See
Cockrell v. State, 933 S.W.2d 73, 91 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1173 (1997). 
            The State argues it substantially complied with article 38.22 because warnings similar to
those required were orally given by the deputies, the warnings appeared on the second written
statement in which Lopez confesses to the murder, and Lopez initialed and signed a rights card prior
to writing the witness list. However, the State does not cite a case, and our research has failed to
disclose any, in which oral warnings or warnings on another document have been held to constitute
substantial compliance. Here, none of the warnings required by article 38.22 appear on the face of
the document. We hold the State did not substantially comply with article 38.22, and the trial court
erred in admitting the statement. See Cockrell, 933 S.W.2d at 91; see also Nonn v. State, 117
S.W.3d 874, 879-81 (Tex. Crim. App. 2003) ( statement that omitted one of the required warnings
held not to be in substantial compliance with article 38.22). 
            Having found error, we must determine whether the error requires reversal. The admission
of the witness list in violation of article 38.22 is a non-constitutional error and requires reversal only
if it affected the defendant’s substantial right. Woods v. State, 152 S.W.3d 105, 118 (Tex. Crim.
App. 2004), cert. denied, 544 U.S. 1050 (2005). A defendant’s substantial rights are affected when
the error had a substantial and injurious affect or influence on the jury’s verdict. Id. If the error had
no or only a slight influence on the verdict, the error is harmless. Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998). In making this determination, we consider the entire record, including
testimony, physical evidence, jury instructions, the State’s theories and any defensive theories,
closing arguments, and voir dire if applicable. Bagheri v. State, 119 S.W.3d 755, 763 (Tex. Crim.
App. 2003).
            Neither the witness list nor testimony about the list played a major role in the State’s case. 
The only trial testimony regarding the list was from Detective Davila, who told the jury he contacted
each person on the list and was unable to confirm Lopez’s claims that she was abused by her
husband. Although the State referred to the list twice during closing argument, the references were
merely to acknowledge the existence of the list and to respond to the defense’s argument that the
sheriff’s office failed to conduct a complete investigation. The jury heard testimony regarding
Lopez’s confession, her admissions to the deputies, and the results of the gun residue tests indicating
she had recently fired or was in close proximity to a fired weapon. The jury also heard evidence the
killing took place in a manner that indicated the shooter had some rage or anger against the victim. 
And the State presented evidence of a motive — Lopez was angry at her husband because he had an
affair with another woman. In light of the evidence against Lopez, we conclude admission of the
witness list did not affect her substantial rights. 
            Accordingly, Lopez’s points of error concerning the admission of her statements are
overruled.
Evidentiary Issues
            We review a trial court’s decision to admit or exclude evidence under an abuse of discretion
standard. McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). The trial court’s ruling
will not be reversed on appeal absent a clear abuse of discretion. Id. An abuse of discretion occurs
when “its decision is so clearly wrong as to lie outside the zone within which reasonable persons
might disagree.” Id. In rare circumstances, erroneous evidentiary rulings may violate constitutional
protections of due process. Potier v. State, 68 S.W.3d 657, 660-65 (Tex. Crim. App. 2002). 
Alternative Perpetrator
            Lopez argues the trial court violated her constitutional right to present a defense when it
excluded evidence that Lopez contends demonstrates the victim was killed by another person. The
evidence at issue included: hearsay testimony the victim may have had “a lot of” enemies; the victim
dealt drugs; the victim was seen with a gun months before the killing; and the victim may have been
affiliated with a gang that had experienced internal strife that led to the killing of at least two
members of the gang. After conducting a hearing outside the presence of the jury, the trial court
concluded the evidence was “largely irrelevant” and the probative value of the evidence was
substantially outweighed by its prejudicial effect, and ruled the evidence inadmissible. See Tex. R.
of Evid. 401 (defining relevant evidence), 402 (non-relevant evidence is inadmissible), & 403
(relevant evidence may be excluded if probative value is substantially outweighed by its prejudicial
effect).
            When a defendant seeks to introduce evidence of an “alternative perpetrator,” he must
establish a sufficient nexus between that person and the crime. Wiley v. State, 74 S.W.3d 399, 406
(Tex. Crim. App. 2002), cert. denied, 537 U.S. 949 (2002). 
In weighing probative value against Rule 403 counterfactors, courts must be sensitive
to the special problems presented by “alternative perpetrator” evidence. Although
a defendant obviously has a right to attempt to establish his innocence by showing
that someone else committed the crime, he still must show that his proffered
evidence regarding the alleged alternative perpetrator is sufficient, on its own or in
combination with other evidence in the record, to show a nexus between the crime
charged and the alleged “alternative perpetrator.”

Id. It is not sufficient for a defendant to proffer “unsupported speculation” that another person may
have committed the crime. Id. at 407 n. 23 (citing United States v. McVeigh, 153 F.3d 1166, 1191
(10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999)).
            Lopez did not provide a sufficient nexus between some alternative perpetrator and the murder
of the victim. None of the evidence pointed to a particular individual as responsible for the killing. 
The proffered evidence amounted to no more than mere speculation that another person may have
committed the crime. We hold the trial court did not err in excluding the evidence.
Text and Voice Messages
            Lopez asserts the trial court erred in allowing the State to place into evidence a recording of
two voice messages left by Lopez on a phone belonging to Nakita Guerrero and a transcript of
several text messages that were exchanged between Lopez and Guerrero the day the victim was
killed. The content of the messages centered on Guerrero’s sexual relationship with the victim. 
Lopez contends that any probative value of the evidence was substantially outweighed by the danger
of unfair prejudice because the evidence contained vulgar and profane language used by her and
demonstrated her anger toward Guerrero, the admitted paramour of the victim. The State responds
the messages were admissible because they supplied evidence of motive — Lopez was angry about
her husband’s affair with Guerrero and that anger was present on the day of the killing.
            We hold the trial court did not abuse its discretion in admitting the evidence. The messages
were clearly relevant to motive and the probative value was not substantially outweighed by any
prejudicial effect.
Comment on Defendant’s Failure to Testify
            Lopez next argues the trial court erred in denying her a mistrial when the State commented
during closing argument on her failure to testify. The comment was made when the State was
discussing its failure to produce the gun at trial. The prosecutor initially argued Lopez had ample
opportunity to dispose of the gun and continued by stating:
Why don’t we have it? I wish we could bring it here for you. But, unfortunately,
Frances Lopez didn’t tell anybody where she put the gun, so we don’t have it.

Lopez objected that the argument was a comment on her failure to testify. The court sustained the
objection, instructed the jury to disregard the statement, but denied Lopez’s request for a mistrial.
            The denial of a mistrial is reviewed under an abuse of discretion standard. Wead v. State, 129
S.W.3d 126, 129 (Tex. Crim. App. 2004). The trial court’s ruling will be upheld on appeal so long
as it is within the zone of reasonable disagreement. Id. Prosecutorial argument is considered a
comment on a defendant’s failure to testify when the language used was “manifestly intended or was
of such a character that the jury would necessarily and naturally take it as a comment on the
defendant’s failure to testify.” Busby v. State, 253 S.W.3d 661, 666 (Tex. Crim. App.), cert. denied,
129 U.S. 625 (2008) (quoting Cruz v. State, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007)). “It is
not sufficient that the language used might impliedly or indirectly be so construed.” Busby, 253
S.W.3d at 666. The full context of the prosecutor’s statement must be considered in determining
whether a jury would “necessarily and naturally” interpret the comment as a reference to the
defendant’s failure to testify. Cruz, 225 S.W.3d at 549.
            The State contends the comment was a reference to Lopez’s confessions rather than a
comment on her failure to testify. While the comment was not an explicit reference to her
statements, based on the context of the argument, we cannot say it was “manifestly intended or was
of such a character that the jury would necessarily and naturally take it as a comment on the
defendant’s failure to testify.” See Busby, 253 S.W.3d at 666; Cruz, 225 S.W. 3d at 549.
Accordingly, the trial court did not abuse its discretion in denying the mistrial.
Conclusion
            The judgment of the trial court is affirmed.
Steven C. Hilbig, Justice
 
PUBLISH