# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00625-CR

**Charles Patterson, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. 3013781, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Charles Patterson appeals from his conviction for indecency with a child by contact following a jury trial. *See* Tex. Pen. Code Ann. § 21.11 (West 2003). Patterson complains that the district court improperly excluded and admitted various evidence. We will affirm the judgment.

### BACKGROUND

On or about August 15, 2001, K.T., who was six years old at the time, was with her family visiting Patterson, a family friend, at Patterson's apartment. Prior to the incident, K.T. and her mother had visited Patterson's apartment on about five other occasions.[1] While at the apartment,

---

[1] The record is unclear regarding the purpose of the family's August 15 visit, but the record indicates that they were living in a shelter at the time, as discussed below, and would go to Patterson's apartment to relax away from the shelter.

K.T.'s mother borrowed Patterson's car to go to the store, leaving K.T., along with her five-year-old sister and three-year-old brother, with Patterson and another adult. While the rest of the group was in a bedroom watching television, Patterson sexually abused K.T. while the two were alone on the living room couch.

After this incident, K.T.'s mother noticed increased anger in the child and a general change in her attitude. Chad Rockowitz, K.T.'s first grade teacher, also noticed that K.T. had begun acting unusually withdrawn from the other children at school. After talking with K.T. and noting that she "recoiled" in response to his statement that "if she was herself people would love her for who she is," Rockowitz consulted with the school's principal and counselor, then reported K.T.'s behavior to Child Protective Services (CPS). Teri Reynolds, a CPS investigator, interviewed K.T. at her school. After Reynolds and K.T. discussed the difference between appropriate and inappropriate touching, K.T. disclosed the sexual abuse by Patterson. Reynolds informed K.T.'s mother of K.T.'s account and arranged an interview with the Children's Advocacy Center.[2] A criminal investigation into Patterson's conduct began shortly thereafter. The State subsequently indicted Patterson on one count of aggravated sexual assault of a child and one count of indecency with a child by contact.

At the jury trial, Dr. William Carter testified for the State that K.T.'s change in behavior was consistent with a reaction to a stressor like sexual abuse. During cross-examination,

---

[2] The Children's Advocacy Center, now known as the Center for Child Protection, provides a homelike environment where children who have reported abuse can go for evaluation, crisis intervention, evidence gathering, and counseling. At the Center, child abuse allegations are investigated by a team of personnel from CPS, Austin Children's Hospital, local law enforcement, and the Travis County District Attorney's Office.

however, Dr. Carter admitted that K.T.'s change in behavior might also have been the result of a traumatic event other than sexual abuse, such as being homeless and moving from shelter to shelter. In fact, K.T.'s mother testified that, around the time of the incident, she and her children had lived at the Salvation Army for approximately sixty days, then moved to SafePlace. Patterson then tried to admit evidence of alternative causes of stress that could have explained K.T.'s behavior. Specifically, Patterson attempted to introduce three CPS reports documenting poor living conditions of K.T. and her family and alleged neglect by K.T.'s mother. The State objected on the basis of relevance to the admission of this "uncharged, extraneous, [and] alleged misconduct," which the district court sustained.

Dr. Beth Nauert, a pediatrician in private practice and medical director of the Children's Assessment Program,[3] also testified for the State at trial. After the Austin Police Department contacted her, Dr. Nauert conducted a physical examination of K.T., and she testified regarding what K.T. told her about the offense. Patterson objected to Dr. Nauert's testimony on the basis that it included an inadmissible prior consistent statement of K.T.'s. *See* Tex. R. Evid. 613. The district court overruled this objection. Dr. Nauert concluded that, despite the absence of physical evidence of sexual abuse, the evidence was not inconsistent with sexual abuse.

The jury acquitted Patterson of aggravated sexual assault but convicted him of indecency with a child by contact. Taking into account Patterson's prior convictions, the jury

---

[3] The Children's Assessment Program is a part-time clinic that evaluates physically or sexually abused children. It is associated with the Children's Advocacy Center.

3

assessed punishment at sixteen years confinement and a $2,000 fine. The district court entered judgment on the verdict. This appeal followed.

## DISCUSSION

Patterson brings two issues on appeal. First, he asserts that the district court erred in excluding relevant evidence of alternative traumatic events that he contends could have explained K.T.'s change in behavior. Second, he argues that the district court erred in permitting K.T.'s prior consistent statement to Dr. Nauert regarding the abuse.

### Standard of review

We review the admission and exclusion of evidence for an abuse of discretion and will not reverse the decision absent a clear abuse of discretion. *See Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Id.*; *see Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Furthermore, even if a trial court abuses its discretion, the judgment will not be reversed if the error was harmless. Tex. R. App. P. 44.2(b); *McClellan v. State*, 143 S.W.3d 395, 401 (Tex. App.—Austin 2004, no pet.); *see Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). A non-constitutional error is harmless if it does not affect the defendant's substantial rights. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a "substantial and injurious effect on the jury's verdict." *In re J.H.*, 150 S.W.3d 477, 486 (Tex. App.—Austin, 2004, pet. denied) (quoting *Morales*

4

*v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)) (internal citation omitted). In assessing the likelihood that the jury's decision was adversely affected by an error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Nonn v. State*, 117 S.W.3d 874, 881 (Tex. Crim. App. 2003).

**Exclusion of evidence of alternative traumatic events**

At trial, the State presented evidence of K.T.'s change in behavior as proof of Patterson's sexual abuse. In his first issue, Patterson argues that the district court erred in excluding relevant evidence of alternative traumatic events described in CPS reports that he contends could have explained K.T.'s change in behavior. *See* Tex. R. Evid. 401, 402. Dr. William Carter, a psychologist for the Waco Children's Advocacy Center, testified for the State that the behavioral changes K.T. exhibited after the incident may be symptoms of experiencing a stressful or traumatic situation like sexual abuse. During cross-examination, Dr. Carter admitted that K.T.'s change in behavior might also have been the result of a traumatic event other than sexual abuse, such as being homeless and moving from shelter to shelter. Furthermore, Dr. Carter admitted that the symptoms an abused child might manifest are indistinguishable between children who have suffered sexual abuse and those who have suffered other sources of stress.

Seizing upon Dr. Carter's admissions that traumatic events other than sexual abuse might have accounted for K.T.'s changed behavior, Patterson attempted to introduce three CPS

5

records documenting the agency's investigations regarding K.T.'s mother's alleged neglectful supervision and physical neglect of her children. The district court excluded all three exhibits.

The district court excluded two of the three CPS records as irrelevant because they involved events that occurred after K.T.'s change in behavior. One exhibit involved alleged misconduct that occurred on January 4, 2002, almost five months after K.T.'s change in behavior and abuse by Patterson. The other exhibit related to alleged misconduct that occurred on June 17, 2002, almost a year after K.T.'s change in behavior. We find that the district court did not abuse its discretion in excluding evidence of alleged misconduct that occurred months after the abuse and change in behavior.

The other exhibit excluded by the district court, however, related to events that had occurred a few months before the August 15, 2001 incident. This exhibit, a report of a CPS investigation opened on May 29, 2001, recounted that K.T.'s mother had been leaving her and her siblings at home unattended for some amount of time on a daily basis and that there had been no running water in their home for the past year, no working toilets at the time of inspection, and that the toilets emanated a strong smell of sewage. We conclude that the district court did not abuse its discretion in excluding this evidence. While the allegations in the CPS report detailed poor living conditions, the district court did not abuse its discretion in distinguishing these allegations from the sort of acute abuse or trauma that Dr. Carter testified could explain K.T.'s change in behavior.

In any event, even assuming that this evidence or the other CPS reports should have been admitted, any error from their exclusion was harmless. *See* Tex. R. App. P. 44.2(b). The jury heard testimony from K.T. regarding her allegations against Patterson, and Reynolds recounted what

6

K.T. told her during the interview when K.T. made her original outcry.[4]  We have considered everything in the record, and cannot conclude that the district court's exclusion of the three exhibits had a substantial and injurious effect on the jury's verdict.  *See Nonn*, 117 S.W.3d at 881; *Morales*, 32 S.W.3d at 867; *Llamas v. State*, 12 S.W.3d 469, 471 & n.2 (Tex. Crim. App. 2000).  We overrule Patterson's first issue.

**Admission of K.T.'s prior statements**

In his second issue, Patterson argues that the district court erred in permitting Dr. Beth Nauert to testify, over Patterson's objection, regarding what K.T. told her about the offense. Patterson argues that the testimony should be excluded as an inadmissible prior consistent statement because it was not offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.  *See* Tex. R. Evid. 613(c), 801(e)(1)(B).[5]  The State argues that the testimony was admissible or, alternatively, that any error in its admission was harmless.

We will not reverse the decision of the district court if there is any theory of law that would allow the testimony, regardless of whether the district court actually used that theory when reaching its conclusion.  *See McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).  The testimony was admissible

---

[4]  The judge admitted Reynolds's testimony regarding K.T.'s allegations as an exception to the hearsay rule because K.T. made her original outcry during Reynolds's interview.  *See* Tex. R. Evid. 802; Tex. Code Crim. Proc. art. 38.072 (West 2005).

[5]  Patterson specifically denied that he was asserting a hearsay objection, acknowledging that the testimony would fall within the exception for medical diagnoses.  *See* Tex. R. Evid. 803(4).

under the exception to Rule 613. Although prior consistent statements are generally not admissible unless they fall within Rule 801(e)(1)(B), Dr. Nauert's testimony falls within that exception because it was consistent with K.T.'s testimony and was offered to rebut an implied charge of recent fabrication or improper influence or motive. *See* Tex. R. Evid. 613, 801(e)(1)(B).

K.T. testified before Dr. Nauert did. On cross-examination by Patterson's attorney, K.T. admitted that she sometimes needs help from other people to correctly remember certain facts. Drawing on this testimony, Patterson insinuated that those who helped K.T. to remember also told her what to say, suggesting that K.T.'s testimony had been fabricated or improperly influenced by others. Patterson thereby placed in issue K.T.'s credibility and the possibility of fabrication or improper influence. Furthermore, after K.T. testified but before Dr. Nauert testified, Patterson led Dr. Carter through a hypothetical regarding a parent who is familiar with the CPS process and manipulates the child into reporting a false allegation of sexual abuse. Against this backdrop, Dr. Nauert's testimony was admissible as a prior consistent statement because it rebutted Patterson's charge of fabrication or improper influence. The district court did not abuse its discretion in allowing Dr. Nauert to testify regarding what K.T. told her about the offense. *See Apolinar*, 155 S.W.3d at 186; *Green*, 934 S.W.2d at 102; *Montgomery*, 810 S.W.2d at 391.

Furthermore, any error in the admission of this testimony was harmless. *See* Tex. R. App. P. 44.2(b). Again, K.T. testified about the abuse herself, and the CPS social worker testified about the original outcry. Other witnesses testified about K.T.'s change in behavior. As Patterson correctly asserts in his brief, the evidence and testimony in the case were hotly contested. We cannot say that Dr. Nauert's confirmation that K.T. had alleged abuse by Patterson made any difference

8

whatsoever to the jury.  Allowing Dr. Nauert to testify to what K.T. told her regarding the sexual abuse was harmless.  We overrule Patterson's second issue.

## CONCLUSION

We affirm the judgment of the district court

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   July 8, 2005

Do Not Publish