

NUMBER 13-12-00084-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

BENJAMIN LEAL, III,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## On appeal from the 103rd District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Benavides and Longoria
## Memorandum Opinion by Justice Longoria

In four issues, appellant, Benjamin Leal III, challenges his conviction for continuous violence against the family. *See* TEX. PENAL CODE ANN. § 25.11 (West 2011). Appellant argues that the trial court erred by: (1) allowing the prosecutor to testify; (2) allowing the victim to verify her medical records for purposes of admission;

(3) preventing a defense witness from proving up her statement that she had never lived with appellant; and that (4) the State failed to prove appellant and the victim cohabited or maintained a common residence.  We affirm.

## I. BACKGROUND

The continuous family violence charge arose out of two separate incidents in February and August of 2010.  In the first, R.R. (the victim in this case), Ana Gonzalez, Isabel Ortega (R.R.'s former mother-in-law), and appellant were at Ortega's apartment in Harlingen, Texas in February 2010.  Gonzalez called 911 because appellant was assaulting R.R. by pushing her, pulling her hair, and hitting her.  Gonzalez stated that R.R. was screaming and "bruised up."  Officer Anthony Bonilla was dispatched to Ortega's apartment and heard a disturbance coming from inside of it.  When he entered the apartment, he saw that R.R. had bruises on her face and arms.  Officer Bonilla testified that R.R. told him she "was being assaulted the whole day, the day prior, the 25th, by [appellant] . . . .[A]nd then on the 26th when she tried to leave and he wouldn't let her leave.  He actually pulled her out of the car and took her back inside . . . and they began arguing."  Officer Bonilla testified that R.R. "advised me that he [appellant] was striking her with a closed fist."  Officer Ricardo Villarreal arrived at Ortega's apartment shortly after Officer Bonilla and observed that R.R. had a black eye.

Approximately six months later, Officer Juan De Leon was dispatched to the Watermill in San Benito, Texas regarding a female assault victim.  Upon arrival, he met R.R. and observed that she had a bruised, black eye and had a cut near her left eye.  She told him that her husband[1]

---

[1] R.R. testified during the trial that although she was not formally married to appellant, they had a child together and she considered him to be her husband.

2

had picked her up at her mom's house in Harlingen, and on their way back to their house in San Benito, for some reason, [appellant] got upset and began arguing with her. She said that they had gone to . . . his friend's house . . . and while they were there, they had gotten into a struggle, and that he had grabbed her by the neck and punched her several times in her left eye.

Officer De Leon testified R.R. told him that "they were at . . . [appellant's] grandma's house, that he had fallen asleep, and then she was able to sneak out and seek help." Officer De Leon called an ambulance, which transported R.R. to Valley Baptist Medical Center. When R.R. arrived at the hospital, she was examined by David Moyer-Diener, M.D. He observed that she had bruises, marks on her skin that appeared to be bite marks, a laceration under her left eye, and "multiple injuries sustained to the upper extremity, probably the shoulder area."

The State subsequently indicted appellant for the offense of continuous violence against the family. *See id.* The case was tried to a jury concurrently with charges from two other indictments.[2] The jury found appellant guilty and assessed a sentence of twenty years' imprisonment and a $10,000 fine, to run concurrently with the three fifteen-year terms imposed in the other cases. This appeal followed.

## II. ANALYSIS

### A. Prosecutor's Testimony

In his first issue, appellant argues that the trial court erred by allowing the prosecutor to testify for Dr. David Moyer-Diener, one of the State's witnesses, about the legal definition of the term "bodily injury" and thereby allowed the doctor to render a legal conclusion about whether R.R.'s injuries constituted bodily injury within the

---

[2] The State separately indicted appellant on two counts of felony failure to appear and one count of felony escape. We decide appellant's appeal of those charges in a separate opinion under cause numbers 13-12-083-CR and 13-12-088-CR.

3

meaning of the statute. Appellant challenges the following exchange between the prosecutor and Dr. Moyer-Diener during the guilt-innocence phase:

> Q. And are you familiar with the legal definition of bodily injury?
> A. No, I am not.
> Q. All right. Under the Texas Penal Code, Sec. 1.07, Sec. 8, bodily injury means physical pain, illness, or--
> Defense Counsel: Objection, Your Honor. Form of the question.
> Court: I'm going to allow it.
> Q. Bodily injury means physical pain, illness, or any impairment of physical condition. Based on what you remember, what you've written in your medical records and the photographs, would you consider, in your expert opinion, the victim in this case to have suffered bodily injury on August 18, 2010?
> A. Yes. I think that's a fair assessment.

### 1. Discussion

In order to preserve error for appellate review, a party's point of error on appeal must comport with the objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see also Braxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) ("In other words, an objection stating one legal theory may not be used to support a different legal theory on appeal." (internal quotation marks omitted)). Appellant argues here that the trial court erred by allowing the prosecutor to elicit testimony from the witness that amounted to a legal conclusion but objected to the prosecutor's question at trial with: "[f]orm of the question." Because appellant's point of error on appeal does not correspond to the trial objection, we overrule appellant's first issue. *See Wilson*, 71 S.W.3d at 349; *Braxton*, 909 S.W.2d at 918.[3]

### B. Verification of Medical Records

In issue two, appellant contends the trial court erred when it allowed R.R. to verify her medical records for the purpose of providing the predicate for admission of the

---

[3] Even if we did find that appellant's argument on appeal matched his objection at trial, an expert witness may testify as to an ultimate issue that to be decided by the trier of fact. *See* TEX. R. EVID. 704.

records.  During the State's direct examination of R.R., the prosecuting attorney moved to offer into evidence a copy of R.R.'s medical records from Valley Baptist Medical Center as Exhibit 33.  Appellant's counsel objected that the records were not self-authenticating because they had not been filed with the trial court clerk fourteen days before the start date of the trial.  *See* TEX. R. EVID. 902(10).  Without ruling on the objection, the trial court permitted the State to "prove them up with this witness [R.R.] . . . because it is her medical records.  I'll allow you the opportunity to question her on the records."  At that point, the following exchange occurred between the prosecutor and R.R.:

> Q. [R.R.], when you went to the hospital, you went to Valley Baptist Medical Center; is that right?
> A. Yes.
> Q. And you were admitted on August 18, 2010; is that correct?
> A. Yes, I guess.  If it's on the paper, yes.
> Q. And, [R.R.], this is your information?  Is this your Social Security number?
> A. Yes.
> Q. And is this your date of birth?
> A. Yes.
> Q. And is this your address?
> A. Yes.

Immediately following this exchange the prosecutor moved to admit Exhibit 33 and appellant's counsel renewed his objection.  The trial court overruled the objection and admitted the exhibit.

### 1.  Standard of Review

"An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard."  *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006) (citing *Rachal v. State*, 917 S.W.2d 799, 816 (Tex. Crim. App. 1996)).  The trial court abuses its discretion when its "decision lies outside the zone of

5

reasonable disagreement." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). When evidence is not admitted in violation of the state or federal constitutions, we conduct a harmless error analysis in which in which we disregard any error that did not affect appellant's "substantial rights." TEX. R. APP. P. 44.2(b); *Nonn v. State*, 117 S.W.3d 874, 881 (Tex. Crim. App. 2003); *see also Mitten v. State,* 228 S.W.3d 693, 696 (Tex. App.—Corpus Christi—Edinburg 2005, pet. dism'd). Any error in admitting evidence is harmless if the same evidence is introduced elsewhere at the trial without objection. *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999); *see Nonn*, 228 S.W.3d at 882.

### 2. Analysis

Appellant argues the trial court erred by allowing the State to lay the predicate for admission of the victim's medical records through her own testimony. In the instant case, R.R.'s medical records contained: (1) photographs of her injuries; (2) the descriptions of her injuries; and (3) the treatment she received. Before the trial court admitted her medical records into evidence, the record reveals that the State's witnesses testified about the information contained in those records without objection. Dr. Moyer-Deiner, the emergency physician who treated R.R. at Valley Baptist Medical Center in August 2010, stated during his testimony that he reviewed R.R.'s medical records prior to testifying at trial. He discussed the injuries R.R. received, the photographs of these injuries, and the treatment provided to her during his testimony. During Dr. Moyer-Deiner's testimony, the trial court judge admitted, without objection, photographs of R.R.'s injuries taken by hospital personnel on the same date. Officer

6

Juan De Leon, who contacted R.R. at the Watermill prior to her admittance to the hospital, also described the injuries sustained by R.R that he observed.

Because it is clear from the record that the State's other witnesses testified to all of the evidence contained within the medical records, we conclude that any error in admitting Exhibit 33 was harmless. *See Chamberlin*, 998 S.W.2d at 235; *Nonn*, 117 S.W.3d at 881 (holding that admitting defendant's videotaped statements to Illinois police was harmless error when the jury had already heard testimony and viewed other statements containing essentially the same information as the challenged statements). Appellant's second issue is accordingly overruled.

## C. Trial Court's Release of R.R. as a Witness

Appellant contends in his third issue that the trial court erred when it truncated his defense by releasing R.R. as a defense witness because she "was prevented from proving up her statement that she had never lived with [appellant]."

During the defense's case-in-chief, defense counsel called R.R. as a witness to testify for appellant. During her testimony, the prosecutor advised the trial court that R.R. should receive advice regarding her right not to answer questions because the direction of her testimony could have subjected her to criminal liability for false statements to Child Protective Services ("CPS").[4] The trial court admonished R.R. that she had the right to speak to an attorney before she answered any more questions about what she told CPS. R.R. told the court that she wanted an attorney and the prosecutor and defense counsel finished questioning R.R. on other matters. R.R.'s attorney subsequently told the trial court that he advised R.R. to invoke her right to

---

[4] R.R.'s testimony appeared to contradict statements she made on official paperwork submitted to CPS regarding who was living with her at the time.

remain silent regarding her statements to CPS. The trial court asked R.R.'s attorney whether he wanted to stay in the courtroom in order to advise her during the rest of the testimony, but counsel for appellant stated: "I'll just go ahead and excuse [R.R.]. I'm done with her. I'll excuse her and I'll leave it like that. I'll end my questioning right here . . . ." The trial court excused R.R. as a witness.

### 1. Discussion

"As a prerequisite to presenting a complaint on appeal, a party must have made a timely and specific request, objection, or motion to the trial court." *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(1)(A)). With regard to appellant's third issue, defense counsel made no request, objection, or motion when the trial court excused R.R. as a witness. In fact, he specifically told the trial court that he was ending his examination and wanted to excuse her. Appellant's complaint on appeal that the trial court erred in releasing R.R. as a defense witness is not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Grant*, 345 S.W.3d at 512. We overrule appellant's third issue.

## D. State's Alleged Failure to Prove Cohabitation Between R.R. and Appellant

In his fourth issue, appellant argues that the State did not produce sufficient evidence that appellant and R.R. ever co-habited or maintained a common residence.

### 1. Standard of Review

"The standard for determining whether the evidence is sufficient to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the

8

crime beyond a reasonable doubt." *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is the sole province of the jury to evaluate the credibility of witnesses and the weight, if any, to be given to their testimony. *Garcia v. State*, 367 S.W.3d 683, 686–87 (Tex. Crim. App. 2010) (citing *Jackson*; 442 U.S. at 319); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). Under Texas law, we measure sufficiency of the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* In this case, the State had to prove the following essential elements of the offense: that appellant, (1) over a period of twelve months or less; (2) two or more times engaged in conduct that constitutes an offense under Section 22.01(a)(1) against another person or persons; and, (3) whose relationship to or association with defendant is described by sections 71.0021(b), 71.003 or 71.005 of the family code. TEX. PENAL CODE ANN. § 25.11(a). Section 22.01(a)(1) of the penal code describes assault causing bodily injury. The family code defines a household as a "unit composed of persons living together in the same dwelling without regard to whether they are related to each other" and provides that the term "member of a household" includes a person who previously lived in the household. TEX. FAMILY CODE ANN. §§ 71.003, 71.005 (West 2008).

9

## 2. Discussion

Appellant argues that the State did not produce evidence establishing beyond a reasonable doubt that he and R.R. were members of the same household, and, therefore, the evidence only supports two convictions for assault. Appellant points out that the State's primary evidence is R.R.'s own testimony that she and appellant lived together and that Hazel Trevino, a CPS caseworker who testified for the defense, testified that R.R. and appellant did not live together to her knowledge.

After reviewing the record in a light most favorable to the prosecution, we conclude that the State produced sufficient evidence from which a rational fact finder could find that the State proved beyond a reasonable doubt that R.R. and appellant were members of the same household. R.R. testified that she and appellant "lived together" at "his mom's house." Ortega's testimony confirmed that R.R. lived with her sporadically, and that when she was "with" appellant, she lived with him at his grandmother's house. On cross-examination, R.R. agreed with defense counsel's statement that she and appellant did not live together, but confirmed on redirect that she did live with him at both locations. The State also introduced a bail bond form signed by appellant that listed appellant's address as Ortega's apartment. Although R.R.'s testimony was admittedly contradictory at times, and Trevino's testimony contradicted the testimony of the State's other witnesses, it is the role of the jury to decide how much weight, if any, to give to witness testimony and we may not second guess that determination. *See Garcia*, 367 S.W.3d at 686–87; *Brooks*, 323 S.W.3d at 899. In sum, we conclude that the State presented sufficient evidence from which a rational jury

could find that appellant and R.R. were members of the same household.  We overrule appellant's fourth issue.

### III. CONCLUSION

Having overruled appellant's four issues, we affirm the judgment of conviction.

_____
NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
21st day of March, 2013.