In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00376-CR
_____

JAMES EDWARD PORTER IV, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 19-02-01899-CR

**MEMORANDUM OPINION**

In May 2019, a Montgomery County Grand Jury indicted James Edward Porter IV for family violence assault, a third-degree felony. The indictment alleges that in late January 2019, Porter assaulted his wife *Laura* and that before January 2019, Porter had been convicted of assaulting another member of his family, a member of his household, or

person with whom he was in a dating relationship.[1] Following a trial by jury, Porter was found guilty of assault, family violence. In the punishment hearing that followed, also before the jury, the State presented evidence proving Porter had been convicted of committing two other felonies, both of which had become final before Porter committed the 2019 assault.[2] After the jury answered "true" to the enhancement paragraphs in the charge, the jury decided Porter should serve a thirty-year sentence. The judgment the trial court signed is consistent with the jury's verdict.

Porter appealed and filed a brief raising eight issues for our review. In issue one, Porter argues the trial court erred in admitting testimony about statements he made to police in what Porter characterizes as a

---

[1]We refer to the victim by a pseudonym to conceal her identity. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"). *See also* Tex. Penal Code Ann. § 22.01(b)(2) (describing the crime of family violence assault).

[2]The enhancement paragraphs relevant to the jury's findings in the trial on punishment allege that Porter was convicted in 2006 in the 176th District Court of Harris County, Texas in Cause Number 1069696 for possessing a controlled substance, and that Porter was convicted in 1999 in the 262nd District Court of Harris County Texas in Cause Number 0832045 for committing a robbery.

custodial interrogation, an interrogation that occurred at Porter's home about a week after Laura's coworker called 911 to report that Porter had assaulted Laura while she was on a break from work. During a hearing to suppress the detective's testimony, Porter argued that the detective who conducted his interview failed to warn him he could remain silent unless his attorney was present and failed to record everything said during the interrogation.[3] In issues two through four, Porter complains about the trial court's rulings admitting some of the testimony and several exhibits into evidence during the trial. In issues five and six, Porter argues there are errors in the charge. In issues seven and eight, Porter complains the evidence is insufficient to support the verdict.

We conclude the arguments Porter relies on to support his issues lack merit. And when the evidence in the trial is viewed in the light that favors the verdict, we conclude it is sufficient to support the verdict. For the reasons explained below, we affirm.

---

[3] *See Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966); Tex. Code Crim. Proc. Ann. art. 38.22.

## Background

### *The January 2019 Altercation*

Porter's indictment arose from an altercation that occurred between Porter and Laura in late January 2019. Initially Laura on the day of the alleged assault and Porter when a detective spoke to them nine days later both said that Porter's hand struck Laura's head. When Porter testified in the trial, he told the jury that he "smack[ed]" Laura with his hand, although he explained he thought he hit her on her shoulder and not on her "face or the head."

Regardless of where his hand touched her body, Porter didn't dispute that his hand contacted Laura's body. And during the trial, Porter testified he thought that under the circumstances he was confronted with he had to strike Laura with his hand. According to Porter, when he and Laura were together on January 22 while Laura was on a break from work, he noticed "she was shaking[.]" He told her "if she was on that stuff, [he] wanted to leave her and get a divorce." The conversation occurred in Laura's truck while Laura was in the driver's seat and Porter was sitting in the passenger's seat with his door open. He

4

did not have his seatbelt on. According to Porter, Laura got "mad and started hitting [him] with her right hand when she took off in the truck."

Porter testified there were three reasons he decided he had to hit Laura with his hand to get her to stop the truck. First, Laura "was swerving back and forth and going around the whole parking lot" making him "fear for [his] life because [he] didn't know if [he] was to get ejected from that truck[.]" Second, as Laura was swerving through the lot in the truck, he saw "a couple of babies walking through the parking lot with two ladies that was behind them," so he didn't "want her to be responsible for running no babies over." Third, according to Porter, he didn't want Laura to get hurt. According to Porter, after he hit Laura with his hand, she stopped the truck and got out. Then, he drove off and left Laura at the scene.

At trial, Laura's explanation about what occurred when she was with Porter in her truck is consistent with what Porter testified occurred. Of course, the jury was aware that Porter and Laura were married when the trial occurred. According to Laura, she had taken cocaine about an hour before meeting Porter and taking her break. Laura testified that she struck Porter after he threatened to leave her and said he wanted a

divorce. When Laura returned to work, she was crying and had a bruise near her eye. According to Laura's coworker, Laura said that Porter hit her with his hand. At trial, however, Laura testified that Porter never hit her when they were together in the truck during her break. And Laura said that as she was driving the truck and swerving through the lot, she heard Porter say there are "kids in the parking lot." When she looked up, she saw "two ladies and two little girls." Porter's door was open. Porter didn't have his seatbelt on. According to Laura, as Porter warned her there were ladies and two little girls in the lot, he pushed her away from the steering wheel of her truck.

Laura also explained why Porter's hand did not cause bruises seen in photos admitted into evidence that are around one of her eyes. According to Laura, after she left the parking lot, she stopped on a side street and "started banging [her] head on the steering wheel[,]" hitting herself "like three or four times." Laura said that after she left the side street, she "went straight back to work."

Even though Laura testified that Porter never hit her with his hand, the jury did not just have to rely solely on her trial testimony when reaching its verdict. In many respects, the accounts Laura and Porter

6

provided the jury in the trial are inconsistent with the accounts they gave others either the day of or shortly after the January 2019 altercation in the truck. For example, when Laura returned to work in January 2019 after taking a break, she spoke to Rachel Rodriguez, a coworker in the grocery store where she worked that, just ten minutes earlier, she had an altercation with Porter while on her break. The State called Rodriguez as a witness in the trial. According to Rodriguez, when Laura returned from her break, Rodriguez noticed that Laura was shaking, had bruises on her face, and was upset and crying. Rodriguez testified that Laura said Porter hit her in the face.

Rodriguez called 911 and reported the incident to the police. During that call, Laura can be heard answering when Rodriguez asks Laura to respond to questions the 911 operator asked Rodriguez while Rodriguez is on the phone. The State introduced the recording of the 911 call into evidence. The recording was admitted and played for the jury without objection in the trial. During the call, Laura identifies Porter as the person who hit her with his hand. Laura can also be heard stating Porter hit her about ten minutes before Rodriguez called 911. Rodriguez

testified the bruises on Laura's face grew larger while the women were waiting for the police at the store.

Deputy Sheriff Troy Mosely, an employee of the Montgomery County Sheriff's Office, went to the grocery store in response to the call Rodriguez placed to 911. The State called Deputy Mosely to testify in the trial. Deputy Mosely testified he photographed Laura's head, and the photos he took show Laura has two lumps near her right eye and a slight bruise on her right ear. The photos were admitted into evidence without objection during the trial. According to Mosely, nothing in his encounter with Laura that day caused him to believe that Laura had taken a controlled substance or that she was high.

*Porter's Arrest*

Nine days after Mosely responded to the call Rodriguez made to 911, two detectives from the Montgomery County Sheriff's Office went to Porter's home to investigate the incident Rodriguez reported to the police. At Porter's request, the trial court conducted a hearing outside the presence of the jury on Porter's objection to the admission of Detective Jacob Erickson's testimony about what Porter told him when the detective spoke to Porter at his home. During the hearing, Porter argued

8

the statements he made to Detective Erickson should be suppressed because the detective failed to comply with the requirements of *Miranda* and failed to record the interview based on the requirements of the Texas Rules of Criminal Procedure.[4]

Detective Erickson and Porter were the only two witnesses who testified in the hearing. Detective Erickson explained he went to Porter's home to investigate the incident that Rodriguez reported to police. While there, he saw Porter, accompanied by Laura, pull up to the residence in a car. When Detective Erickson saw Laura, he knew there was a protective order between the couple. However, without a copy of the protective order, he said he couldn't tell whether Porter was violating the order by being with Laura in the car. According to Detective Erickson, he detained Porter based on his training regarding that situation. Then, he handcuffed Porter, started his recorder, and read Porter his *Miranda* rights to investigate whether Porter was violating the protective order by being with Laura in the car. After Detective Erickson started the recorder, he explained, Porter "started to talk[.]"

---

[4] *Id.*

Shortly after Detective Erickson started the recorder, he determined the recorder was not working. He noticed when he reached into his pocket the recorder "was on" but it "wasn't saying 'record.'" So Detective Erickson removed the batteries from the recorder, put the batteries back in, turned the recorder back on, and then pressed record. Although that fixed the recorder, the detective captured only half the conversation he had with Porter after placing Porter in handcuffs.

The trial court listened to the recording during the hearing. Porter is heard in the recording stating that he "smacked" Laura in the head on January 22. And during the recorded portion of Porter's interview, Porter acknowledges Detective Erickson gave him a *Miranda* warning.[5] After the trial court finished listening to the recording, Detective Erickson

---

[5]While Porter acknowledged Detective Erickson gave him a *Miranda* warning when starting the interview, the warning Porter received is unrecorded. Detective Erickson did not repeat the warning after the recorder started working. And during the hearing, no one asked Porter or Detective Erickson when he interviewed Porter at his home. No mention is made about the date in the recording. In opening statement, the prosecutor mentioned that Detective Erickson found Porter with Laura at his home on January 31st, so we assume the interview occurred nine days after Porter allegedly assaulted Laura while the two of them were together in her truck.

swore he did not take Porter into custody until after he told Porter he was arresting Porter for violating the protective order.

As previously mentioned, Porter testified in the hearing. Porter said he couldn't recall if Detective Erickson told him he had the right to have an attorney present when being questioned by police. Porter also testified that had he known he had a right to have an attorney present, he would have invoked that right. According to Porter, he was unaware the detective was recording the interview. Porter testified (and Detective Erickson did not dispute) that Porter was handcuffed while he was questioned.

When the hearing ended, the trial court found that Detective Erickson warned Porter of his *Miranda* rights even though the warning was unrecorded. The trial court also found that Detective Erickson had not taken Porter into custody for assault family violence when questioning him on matters related to that case.

*The Trial*

The State called (1) Detective Erickson, (2) Officer Troy Mosely, (3) Laura, (4) Rachel Rodriguez, (5) Mark Wright, (6) Pam Traylor, and (7) Stacy Sherlock in the guilt phase of Porter's trial. Except for Wright,

Traylor, and Sherlock, we have already mentioned Erickson's, Mosely's, Laura's, and Rodriguez's roles in Porter's case. The State called Wright because he is a latent print examiner who has worked for the Montgomery County Sheriff's Office Crime Lab for fifteen years. When Wright testified, the State offered a certified copy of a conviction Porter incurred on a Class-A misdemeanor "ASSAULT-FAMILY VIOLENCE" into evidence in Porter's trial. The judgment on the Class-A misdemeanor assault was marked as Exhibit 1 and the certified copy of the judgment shows Porter was convicted of the assault in May 2013. Porter objected to the exhibit and complained it was inadmissible, arguing the judgment does not contain an "affirmative finding" of family violence, a finding he suggested is a required finding before the judgment is admissible as a prior conviction under Article 42.013 of the Texas Code of Criminal Procedure.[6] The trial court overruled Porter's objection and admitted the exhibit into evidence in Porter's trial.

---

[6]Tex. Code Crim. Proc. Ann. art. 42.013 ("In the trial of an offense under Title 5, Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case.").

Pam Traylor testified she is a victim assistance coordinator with the Montgomery County District Attorney's Office. According to Traylor, when she encountered Laura, Laura engaged in behavior typical of victims of domestic violence based on Traylor's training and experience as a victim assistance coordinator. Traylor, who said that in 2012 she worked as a deputy with the Montgomery County Sheriff's Office, testified she investigated the assault that resulted in Porter's conviction in 2013 on the Class-A misdemeanor assault. The assault Traylor investigated ended with Porter's conviction reflected by the judgment marked and admitted as State's Exhibit 1.

Analysis

*Motion to Suppress*

In Porter's first issue, he raises two distinct arguments. First, he claims the trial court erred in finding that Detective Erickson read Porter his *Miranda* rights. Second, he argues that even if Detective Erickson did so, the trial court nonetheless still erred in admitting the statement because the detective failed to record the warning, as required by the

Texas Code of Criminal Procedure.[7] Porter argues that the trial court's decisions admitting Detective Erickson's testimony about what he told the detective and what he said in the recording were harmful because in them, he "admitted that he assaulted [Laura]" when he never admitted to having assaulted Laura when he spoke to anyone else. Porter concludes that had the State not had the benefit of that evidence, which corroborated the other evidence it had of the alleged assault, "the prosecution's case was weak overall."

To begin, we note the defendant seeking to suppress a statement that he gave to an officer based on his claim the officer violated his rights under *Miranda* bears the burden to establish the statement was a product of a custodial interrogation before the burden shifts to the State to show the officer complied with *Miranda*.[8] On appeal, we use a

---

[7]*See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(1) (providing that no oral statement of an accused made as a result of custodial interrogation is admissible against an accused in a criminal proceeding unless "an electronic recording . . . is made of the statement").

[8]*Compare* Tex. Code Crim. Proc. Ann. art. 38.22, *with Miranda*, 384 U.S. at 478-82.

bifurcated standard to review the trial court's ruling on a motion to suppress.[9] Under that standard:

> The trial court is given almost complete deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. However, for mixed questions of law and fact that do not fall within that category, a reviewing court may conduct a *de novo* review.[10]

Thus, as that standard applies to Porter, we afford almost total deference to the trial court's finding that Detective Erickson gave Porter a *Miranda* warning before asking Porter any questions about the altercation he had with Laura on January 22. And we also afford almost total deference to the trial court's finding that Detective Erickson thought he had his recorder on before starting the interview with Porter, as well as the trial court's finding that Detective Erickson was unaware that the recorder was not working when the interview began.

---

[9]*Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018).

[10]*State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019) (cleaned up).

When questions do not require the reviewing court to resolve issues of credibility and demeanor, however, such as whether a reasonable person under the circumstances would feel free to terminate an interview being conducted by police and leave, they are reviewed de novo.[11] Stated another way, we apply a deferential standard of review to the trial court's factual assessment of the circumstances surrounding Porter's interrogation, and a de novo review to the trial court's legal determination regarding whether Porter, under the circumstances, was in custody.[12] After applying the above standards, we will sustain the trial court's ruling if it "is correct under any applicable theory of law."[13]

We note that Article 38.22 of the Texas Code of Criminal Procedure requires custodial statements taken by an officer to be recorded even though that requirement goes beyond the requirements imposed on police by *Miranda*.[14] Specifically, section 3(a) of Article 38.22 makes oral

---

[11]*See Thompson v. Keohane*, 516 U.S. 99, 113-14 (1995); *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013).
[12]*Saenz*, 411 S.W.3d at 494.
[13]*Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016).
[14]Tex. Code Crim. Proc. Ann. art. 38.22.

16

statements taken of those accused of crimes in custodial interrogations inadmissible unless the statement is recorded.[15]

Here, no dispute exists about whether two detectives went to Porter's home and gathered evidence about an incident reported to police on January 22, 2019, involving Porter's wife Laura. And no dispute exists about whether while the detectives were there, Porter arrived, and Detective Erickson handcuffed him to investigate whether Porter was violating a protective order because he was with Laura in a car. Nor is there a dispute about whether Detective Erickson questioned Porter about his version of what occurred in Laura's truck nine days earlier after Laura told a coworker that Porter hit her in the face.

What Porter disputes is whether Detective Erickson warned him of his *Miranda* rights questioning him about the altercation in the truck. As to whether Porter received a *Miranda* warning, Detective Erickson testified he read Porter his *Miranda* rights before conducting the interview. For his part, however, Porter testified he couldn't remember whether Detective Erickson had warned him he had a right to have a

---

[15]*Id*. art. 38.22, § 3(a).

17

lawyer present when interviewed by police. But the trial court found as a matter of historical fact that Porter received his *Miranda* warning before Detective Erickson questioned him. And as a reviewing court, we must defer to that finding in the appeal.[16]

Alternatively, Porter argues that even if he received a *Miranda* warning, the detective's testimony about what he told the detective is inadmissible because Detective Erickson failed to accurately record the statement as required by Texas law.[17] Under Article 38.22, statements obtained by police in custodial interrogations are inadmissible unless an accurate recording of the accused's statement is obtained during the interrogation.[18] In Porter's hearing, the trial court found that Porter was not in custody when Detective Erickson questioned him. Porter, however, argues he was in custody because Detective Erickson had him handcuffed with his hands behind his back. We note the testimony shows the handcuffs were never removed during the interrogation. In response, the

---

[16]*See Martinez*, 570 S.W.3d at 281.
[17]*See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3.
[18]*Id.*

18

State argues that the trial court found that Porter was not in custody and argues that finding is supported by the record.

Here, even if we assume Porter was in custody for purposes of the interrogation, a matter we need not decide, and further assume that Article 38.22 permits no excuses for a malfunction in recording equipment even when the excuse is one the trial court finds reasonable, which is the finding the trial court made here, the error in admitting testimony and evidence to show what Porter said to Detective Erickson are procedural errors under State law that requires the reviewing court to decide whether the error had a substantial or injurious effect on the jury's verdict.[19]

The reason the error is procedural and not of constitutional dimension is that Article 38.22 only prescribes the procedural requirements the State must follow when it states officials conduct custodial interrogations to permit the admission of those statements into evidence in a trial.[20] Stated another way, the recording requirement Porter relies on is not a constitutional requirement mandated by

---

[19]Tex. R. App. P. 44.2(b).
[20]*Davidson v. State,* 25 S.W.3d 183, 186 (Tex. Crim. App. 2000).

*Miranda*; instead the recording requirement is a procedural requirement the State legislature imposed on police as a procedural hurdle as a hurdle to the admission of a statement taken by an officer in a state statute.[21] That is to say that Porter's statement was not taken in violation of *Miranda,* so the trial court's ruling admitting it is characterized as "non-constitutional" error.[22] Thus, the harm analysis that applies to Porter's issues requires us to decide if the trial court's ruling admitting Porter's statement to Detective Erickson in violation of the recording requirements of Article 38.22 had a substantial or injurious effect on the jury's verdict.[23]

To evaluate harm, "the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case."[24] In our evaluation, we

---

[21]*Compare Miranda,* 384 U.S. at 478-482, *with* Tex. Code Crim. Proc. Ann. art. 38.22.

[22]Tex. R. App. P. 44.2(b); *Nonn v. State,* 117 S.W.3d 874, 880-81 (Tex. Crim. App. 2003).

[23]*Id.*

[24]*Morales v. State,* 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

consider all evidence before the jury and "the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to appellant's claim."[25]

When Porter explains how he was harmed by the ruling admitting Detective Erickson's testimony the recording about the statement, he argues he was harmed because Detective Erickson testified Porter "admitted that he assaulted the alleged victim." Porter suggests his admission to Detective Erickson that he assaulted Laura was not cumulative of any other testimony in evidence, suggesting none of the other testimony before the jury shows he assaulted Laura while they were together in her truck.

We disagree. When Porter testified in his defense, the following exchange occurred:

> Q. What did you do next?
>
> A. I had my head turned like this, and I smacked out at her because I knew she was going to hit me again. . . . And I did smack out at her. I own that. I did smack out at her because I didn't know where I connected with her at. You know? The officer said the face or the head. I thought it was the head and the shoulder area.

---

[25] *Id.*

On cross-examination, Porter testified "I am guilty of smacking her, but I did not put those lumps on her head. I didn't do that. I had my head turned." Finally, in the recording of the 911 call, which was admitted without objection, Rodriquez (Laura's coworker) can be heard telling the 911 operator that Laura's "husband just hit her in the face."

Since the admission of the evidence of Porter's statement is solely a statutory violation, the Rule 44.2(b) standard governing non-constitutional error applies to the analysis of Porter's complaint in his appeal. At trial, Porter testified his hand struck Laura. And there were photographs in evidence showing bruises to Laura's face shortly after she and Porter were together. Two witnesses, Mosely and Rodriguez, encountered Laura within less than an hour of the altercation. Both of their accounts are consistent with the jury's conclusion that Laura was recently assaulted and struck in the face. Thus, even if we assume the trial court admitted the recording and Detective Erickson's testimony about what Porter told Detective Erickson in violation of the recording requirement found in Article 38.22, we are not persuaded, based on how Porter claims he was harmed, that admitting the recording and Detective

22

Erickson's testimony about what Porter told him had a significant adverse effect on the jury's verdict.[26]

Even though Laura denied Porter struck her in the face when the case went to trial, the jury—as the trier of fact—was entitled to reasonably believe all, some, or none of her testimony in the trial.[27] She told Rodriguez that Porter hit her in the face the same day the altercation occurred. The photos Deputy Mosely took show what appear to be bruises around Laura's face. In the end, Detective Erickson's testimony and the partial recording admitted into evidence are cumulative of other evidence showing that Porter struck Laura while the two were together in Laura's truck. We conclude the admission of the evidence that Porter complains about in his appeal did not affect his substantial rights.[28] Porter's first issue is overruled.

*Admission of Prior Family Violence Judgment*

In issue two, Porter complains the trial court erred in admitting a judgment of conviction showing that in 2013, Porter was convicted of

---

[26]*See Nonn*, 117 S.W.3d at 883.
[27]*See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
[28]Tex. R. App. P. 44.2(b).

23

"ASSAULT – FAMILY VIOLENCE" when the judgment does not include a separate finding by the trial court on whether the crime he committed involved family violence.[29] The indictment at issue here alleges that Porter assaulted Laura in January 2019 and that he had a prior conviction for assaulting her when they were in a relationship or association described in section 71.003, section 71.005, or section 71.0021(b) of the Family Code.[30] By alleging Porter had previously been convicted of an assault involving a crime involving family violence, as that term is defined by the Family Code, the indictment elevated the penalty that applied to Porter's crime, if he was convicted, from the penalty that applies to a Class-A misdemeanor to the penalty that applies to a third-degree felony.[31] Porter concludes that without the benefit of the 2013 judgment, the State failed to establish that he was previously convicted of a crime involving family violence required to elevate the

---

[29]*See* Tex. Code Crim. Proc Ann. art. 42.013 (requiring trial courts to make an affirmative finding of the fact of family violence and enter the affirmative finding in the judgment of the case if the court determines that the offense involved *family violence* as defined by Section 71.004 of the Family Code).

[30]*See* Tex. Penal Code Ann. § 22.01(b)(2).

[31]*Compare* Tex. Penal Code Ann. § 22.01(b)(1), *with* 22.01(b)(2).

penalty that applies to his conviction from that of a Class-A misdemeanor to a third-degree felony.[32]

Under Porter's indictment, to prove Porter committed a third-degree felony assault rather than a Class-A misdemeanor assault, the State had to prove that Porter had been convicted of assaulting a person whose relationship is described by section 71.0021(b), section 71.003, or section 71.005 of the Family Code.[33] Generally, the State proves the prior conviction by proving the judgment the trial court signed in the prior case contains an affirmative finding of family violence, since trial courts are required to include family violence findings in judgments convicting defendants of assaults are listed under Title 5 of the Texas Penal Code.[34] In response to Porter's argument, the State does not argue the recitals in the judgment in 2013 stating that Porter was convicted for "ASSAULT-FAMILY VIOLENCE" complies with the affirmative finding requirement

---

[32] *See* Tex. Penal Code Ann. § 22.01(b)(2).
[33] *Id*.
[34] *See* Tex. Code Crim. Proc. Ann. art. 42.013 (requiring trial courts to make affirmative findings of family violence in trials of offenses under Title 5); Tex. Penal Code Ann. §§ 19.01-22.12 (Title 5, Offenses Against Persons).

of Article 42.013.[35] Instead, the State argues it proved Porter's 2013 conviction involved *family violence* by proving that Laura was the victim of the assault that resulted in Porter's 2013 conviction and that Laura and Porter were dating when he committed the offense.[36]

Porter essentially admitted to these facts during the trial. When he testified, Porter said he had previously been convicted of assaulting Laura when she was his girlfriend. On cross-examination, Porter testified he assaulted Laura "on July 10, 2012."[37] Porter also testified that his thumbprint is on the judgment of conviction dated May 2013 tied to the July 2012 assault, a judgment marked and admitted as State's

---

[35]Tex. Code Crim. Proc. Ann. art. 43.013.

[36]*See Wingfield*, 481 S.W.3d at 379 (concluding that evidence extrinsic to the judgment established the victim was a member of the defendant's household when the prior assault occurred even though the trial court, on the prior judgment, had circled *No* on the judgment of conviction when it made the family violence finding required by article 42.013); *State v. Eakins*, 71 S.W.3d 443, 445 (Tex. App.—Austin 2002, no pet.) (explaining that in the felony assault case under section 22.02(b), article 42.013 does not prohibit the State from proving the defendant committed the prior offense against someone in one of the relationships described in sections 71.0021(b), 71.003, or 71.005 of the Family Code based on evidence extrinsic to the prior judgment).

[37]The 2013 conviction recites the offense "was committed on July 10, 2012."

Exhibit 1.[38] Sergeant Stacey Sherlock testified that based on the investigation she conducted in Porter's case, she determined that Laura was Porter's victim in the assault he committed in 2012 and 2019. Sergeant Sherlock also testified that Laura was Porter's girlfriend in 2012. Laura testified that she and Porter dated for around ten years and married around three years before the trial that occurred in 2019.

The prior judgment for assault was admissible because it was relevant to proving that Porter had a prior conviction for committing an assault against a person with whom he was in a dating relationship as required by section 71.0021(b) of the Family Code.[39] The trial court's ruling admitting the 2013 judgment (State's Exhibit 1) was not overly prejudicial since the evidence the State presented demonstrated that Laura was the victim of the assault.[40] Here, it's undisputed that Porter

---

[38]The State also matched up the print through Mark Wright, a latent print examiner whose testimony we described when describing the witnesses who testified in the trial.

[39]Tex. R. Evid. 401 (Test for Relevant Evidence), Tex. R. Evid. 402 (Relevant Evidence Generally Admissible); Tex. Fam. Code Ann. § 71.0021(b) (defining *dating relationship as* "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature").

[40]Tex. Penal Code Ann. § 22.01(b)(2)(A).

and Laura were in a dating relationship in 2012 when the assault that resulted in Porter's conviction in 2013 occurred.

We conclude that Porter's argument claiming the trial court erred in admitting the 2013 judgment lacks merit. And we further conclude Porter's argument lacks merit to the extent that he may be arguing the evidence is insufficient to support the jury's conclusion that he and Laura were in a dating relationship when the assault resulting in his 2013 conviction occurred. We overrule Porter's second issue.

*The Text Messages*

In issue three, Porter complains the trial court erred when it admitted text messages that Deputy Mosely recovered from Laura's phone on January 22. The messages Mosely recovered cover a period that starts about 30-days before the fight Porter and Laura had in her truck. When the State asked the trial court to admit the texts, Porter objected, claiming they included extraneous offenses that were not relevant to the alleged assault because in some of the texts Porter had threatened Laura when he accused her of having an affair. In response to Porter's objection, the prosecutor argued the texts were relevant to proving the assault because they revealed the nature of Porter's and Laura's relationship and

28

they impeached Laura's testimony that Porter had "never threatened her before."

We review a party's claim challenging the admission of an extraneous offense under an abuse of discretion standard.[41] "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld."[42] Generally, a trial court's ruling to admit evidence of an extraneous offense is within the zone of reasonable disagreement if the evidence is relevant to a material issue and if the probative value of the evidence is not outweighed by the danger of unfair prejudice.[43]

While subject to numerous exceptions, the general rule is that evidence showing a defendant committed an extraneous bad act or crime is inadmissible.[44] Thus, Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible "'to prove the character of a

---

[41]*De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).
[42]*Id*. at 343-44 (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).
[43]*Id*. at 344.
[44]*See* Tex. R. Evid. 404(b).

29

person in order to show action in conformity therewith[.]'"[45] That said,

evidence of an extraneous bad act or crime may be admissible, when

relevant, to proving motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident.[46]

In prosecutions involving alleged assaults against a member of a

defendant's family, the Code of Criminal Procedure authorizes a trial

court to admit evidence of any relevant facts that will assist the jury in

determining whether the defendant committed the offense, "including

testimony or evidence regarding the nature of the relationship between

the actor and the alleged victim."[47] At trial, the argument the prosecutor

presented implies the State was relying on article 38.371 to explain why

---

[45]*Berry v. State*, 233 S.W.3d 847, 858 (Tex. Crim. App. 2007) (quoting Tex. R. Evid. 404(b)).

[46]Tex. R. Evid. 404(b); *see De La Paz*, 279 S.W.3d at 342-43; *see also Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001) (noting that a trial court has discretion to admit extraneous offense evidence to rebut a defensive theory raised in an opening statement); *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1996) ("[E]xtraneous offenses are admissible to rebut defensive theories raised by the testimony of a State's witness during cross-examination."); *Halliburton v. State*, 528 S.W.2d 216, 219 (Tex. Crim. App. 1975) (op. on reh'g) ("If the extraneous offense is relevant in tending to disprove the defensive theory, it should be admissible.").

[47]*See* Tex. Code Crim. Proc. Ann. art. 38.371(b).

the texts were admissible in Porter's trial. And the text messages are relevant to a material, non-propensity issue because they contextualize the nature of Laura's and Porter's relationship since they provide the jury insight into the dynamics of Porter's and Laura's relationship so the jury could evaluate Porter's claim that he was justified and found it necessary to strike Laura with his hand to force her to stop the truck.[48] On top of that, the texts rebut Laura's testimony that Porter never threatened her before January 22 since they show he threatened to harm her several times in the thirty-day period preceding the assault.

When the evidence a party wants to introduce is relevant, courts start with a presumption that evidence "is more probative than prejudicial."[49] Porter argued the texts were not relevant.[50] Porter also argued that admitting the texts was unfairly prejudicial.[51] To determine whether evidence is unfairly prejudicial, trial courts balance:

---

[48]*See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) ("A trial court's 404(b) ruling admitting evidence is generally within [the zone of reasonable disagreement] if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue.").

[49]*Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

[50]*See* Tex. R. Evid. 401.

[51]*See id*. 403.

(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that the presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.[52]

On appeal, Porter argues that the texts were not relevant because Laura "did not deny being threatened by [Porter]." While that may be true, she also never unequivocally admitted that Porter had threatened her before January 22. During the trial, the prosecutor asked Laura during the State's case-in-chief: "Has [Porter] ever threatened you before?" Laura answered: "Not that I recall."

Generally, the text messages show that Porter had threatened Laura several times in the month leading up to the altercation on January 22. For example, one of the text messages states: "I[']ll smack ur mf face." Another states: "I[']m bout to kill u[.]" Porter suggests that Laura's failure to recall these messages is not an outright denial that she

---

[52]*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

received them. But the trial court had the discretion to interpret Laura's response "Not that I recall[]" as a denial, and at best the court's decision to do so is a decision that falls in the zone of reasonable disagreement.

We conclude the trial court did not abuse its discretion in finding the text messages relevant to issues material to Porter's trial.[53] We further conclude the rulings admitting the texts fall in the zone of reasonable disagreement. For these reasons, we overrule Porter's third issue.

*Rodriguez's Testimony About What
Laura Said When Laura Returned From Lunch*

In Porter's fourth issue, he complains the trial court allowed Rodriguez to testify that Laura said "her husband hit her" when she returned to work from her break. According to the State, Porter failed to preserve his complaint that Rodriguez's testimony about what Laura said was inadmissible hearsay because Porter failed to object before Rodriguez answered the question. Additionally, the State points out that Porter failed to object when for a second time the prosecutor asked Rodriguez a short time later: "Who did she tell you hit her?" Rodriguez

---

[53]Tex. R. Evid. 402, 403.

responded: "Oh, her husband." Porter did not object to the question or to Rodriguez's answer.

To preserve error, the party who complains must generally demonstrate that he lodged a timely objection to the matter that notified the trial court of the complaint.[54] If a question clearly calls for an objectionable response, attorneys should object to the question before the witness responds.[55] When the record shows the defendant failed to object until after the objectionable question was answered and no legitimate reason justifies the delay, the "objection is untimely and [the] error is waived."[56]

The question the prosecutor asked Rodriguez called for a hearsay response. The prosecutor asked Rodriquez: "Did she mention who had hit her? Rodriguez responded: "She said her husband hit her." Porter did not object to the prosecutor's question until after Rodriguez had answered. And Rodriguez gave the same basic answer again a short time later, and when she did, Porter failed to make any objection. His failure to object

---

[54]Tex. R. App. P. 33.1(a).
[55]*Dinkins v. State,* 894 S.W.2d 330, 355 (Tex. Crim. App. 1995).
[56]*Id.*

the second time cured any error even had Porter properly and timely objected to the question when the prosecutor first asked Rodriguez whether Laura mentioned who had hit her.[57] We conclude Porter failed to preserve the error he complains about in his fourth issue for appellate review.[58]

*Charge Error — Additional Language on Porter's Defense of Necessity*

Section 9.22 of the Penal Code creates a "necessity" defense if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
(2) the desirability and urgency of avoiding the harm clearly outweighs, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.[59]

In the charge conference, Porter asked the trial court to submit a necessity defense as part of the charge. On appeal, Porter argues that as to his necessity claim, the trial court omitted language that he requested from the charge that had the language he wanted been included, the jury would have considered whether Porter was justified in hitting Laura to

---

[57]*Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003).
[58]Tex. R. App. P. 33.1(a).
[59]Tex. Penal Code Ann. § 9.22.

35

prevent her from causing an accident or throwing him out of the truck to avoid her injuring Porter specifically rather than just others.

The application language the trial court submitted on Porter's claim of necessity states, in relevant part:

> Therefore, even if you believe from the evidence beyond a reasonable doubt that on or about January 22, 2019, in Montgomery County, Texas, the defendant, JAMES EDWARD PORTER, did then and there, intentionally, knowingly, or recklessly cause bodily injury to Lyndsey Porter, as alleged in the indictment, but you further believe, or you have a reasonable doubt thereof, that, at the time of such conduct, the defendant reasonably believed such conduct was immediately necessary to avoid imminent harm, to-wit: injuring others, and that the desirability and urgency of avoiding that harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing such conduct, you will find the defendant not guilty.[60]

---

[60]We expressly do not approve or endorse the language the trial court used in the charge to submit the issue of necessity to the jury in Porter's case since the charge includes no abstract language on the defense; however, Porter does not complain about the absence of that language in his appeal. And given the argument Porter makes, we need not decide whether the charge correctly submits a necessity claim and instead resolve the much narrower argument Porter complains about in his appeal. *See generally* COMMITTEE ON PATTERN JURY CHARGES OF STATE BAR OF TEXAS, CRIMINAL PATTERN JURY CHARGES CPJC 28.2 (2018) (suggesting how the defense when raised should be submitted).

During the charge conference, Porter asked the trial court to include the words "or to the Defendant" after the words "injuring others" in the paragraph quoted above. Porter argued the jury needed the additional language he wanted the court to include in the charge so the jury could consider whether it was necessary for him to hit Laura to "avoid danger to himself."

"Texas law mandates that a trial court submit a charge to the jury setting forth 'the law applicable to the case.'"[61] "All alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court."[62] "Appellate review of purported error in a jury charge involves a two-step process."[63] "First, we determine whether the jury instruction is erroneous."[64] "Second, if error occurred, then an appellate court must analyze that error for harm."[65]

Under Section 2.03(c) of the Penal Code, "the issue of the existence of a defense is not submitted to the jury unless evidence is admitted

[61]*Druery v. State*, 225 S.W.3d 491, 505 (Tex. Crim. App. 2007).
[62]*Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).
[63]*Id.*
[64]*Id.*
[65]*Id.*

supporting the defense."[66] That said, trial courts must submit instructions on defenses raised by the evidence, regardless of the source of the evidence or its strength and even if the evidence is contradicted or incredible.[67] "[A] defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that the element is true."[68] "While the evidence may be weak or contradicted, there must be at least some evidence to support the defense as a rational alternative to the defendant's criminal liability."[69]

Here, Porter argues he had no reasonable option other than hitting Laura to make her stop the truck to prevent her from causing a collision or ejecting him from the car, an event he claims might have resulted in his injury. Even so, there is no rational basis on which the jury could have concluded that Porter would have been safer by striking Laura in the face while she was driving the truck as opposed to grabbing for the truck's

---

[66]Tex. Penal Code Ann. § 2.03(c).

[67]*Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013).

[68]*Id.* (quoting *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007)).

[69]*Id.*

38

wheel. At trial, no witness testified how fast the truck was traveling when Laura was driving through the lot. Thus, no rational basis exists for the jury to gauge what Porter's risk of injury was from being thrown from a moving truck as opposed to his risk of striking Laura and causing her to lose control over the truck. Nor from the evidence before the jury could a jury rationally decide whether ordinary standards of reasonableness require someone to strike the driver in the face to make them stop when a rational reaction based on the situation Porter described would be for the passenger to grab for the steering wheel or to have placed their foot on the brake. Porter's testimony that he was afraid he might be injured, even if true, does not raise an issue on necessity of striking his wife who was driving rather than grabbing for the wheel or reaching for the brake.[70]

Simply put, Porter was not entitled to a submission of necessity based on the evidence before the jury in his trial.[71] For that reason, we

---

[70]*See* Tex. Penal Code Ann. § 2.03(c).

[71]*Id.*; *see Jackson v. State*, 50 S.W.3d 579, 595 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding appellant was not entitled to necessity defense when evidence "failed to provide any evidence that he reasonably believed his erratic driving was immediately necessary to avoid imminent harm").

need not analyze the argument Porter relies on in his fifth issue to determine whether the trial court's omission of the additional language Porter asked for caused harm.[72] Porter's fifth issue is overruled.

*Charge Error — Failure to Submit Simple Assault*

In Porter's sixth issue, he argues that the trial court erred in failing to submit instructions allowing the jury to consider whether he committed simple assault, a Class-A misdemeanor, rather than family violence assault, a third-degree felony.[73] Porter argues the jury could have rationally found he was not convicted in 2013 of assaulting Laura when the two were in a dating relationship.

We disagree. To be entitled to an instruction on a lesser-included offense, there must be "some evidence that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser-included offense."[74] Stated another way, "[t]he evidence must

---

[72]*See Ngo v. State,* 175 S.W.3d 738, 744 (Tex. Crim. App. 2005).
[73]*Compare* Tex. Penal Code Ann. § 22.02(a) (simple assault), *with* Tex. Penal Code Ann. § 22.01(b)(2) (family violence assault).
[74]*Goad v. State,* 354 S.W.3d 443, 446 (Tex. Crim. App. 2011).

establish the lesser-included offense as a valid rational alternative to the charged offense."[75]

Here, the record shows that during the trial, Porter testified his thumbprint is on State's Exhibit 1, which is the judgment where he was convicted of committing a Class-A misdemeanor assault. The exhibit recites the conviction is for "ASSAULT – FAMILY VIOLENCE, a Class A misdemeanor," yet the judgment does not contain the trial court's separate affirmative finding of family violence even though that finding was required under article 42.013.[76] Still, the State presented testimony separate from the 2013 judgment (including Porter's own testimony) to prove that he was in a dating relationship with Laura, the victim who was the subject of the assault relevant to State's Exhibit 1.

Porter points to no evidence showing any conflict exists in Porter's own testimony showing that he and Laura were in a dating relationship when the assault relevant to State's Exhibit 1 occurred; rather, Porter suggests conflict exists because the trial court failed to make the affirmative finding required by article 42.013. Of course, the record that

---

[75] *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000).
[76] Tex. Code Crim. Proc. Ann. art. 42.013.

is before us here supports the verdict the jury reached that Porter and Laura were in a dating relationship when Porter assaulted Laura in 2012 and was then convicted of that assault in 2013.[77] The fact that in 2013 the judge of the 221st District Court failed to include the affirmative finding required by article 42.012 in the judgment of conviction it signed is unexplained in this record. And given the evidence the State presented proving that the 2013 conviction was a conviction for assault against a person with whom Porter was in a dating relationship, Porter's sixth issue lacks merit and is overruled.

*Sufficiency Challenge*

In Porter's last two issues, issues seven and eight, he argues the State failed to present sufficient evidence to support his conviction and erred in denying his motion for directed verdict. "A motion for instructed verdict is essentially a trial level challenge to the sufficiency of the evidence."[78] The *Jackson v. Virginia* standard of review applies when the defendant complains in the appeal that the evidence is insufficient to

---

[77]State's Exhibit 1 reflects the "offense was committed on July 10, 2012."

[78]*Smith v. State,* 499 S.W.3d 1, 6 (Tex. Crim. App. 2016).

support the verdict the jury reached.[79] Accordingly, we address Porter's last two issues together.

We review Porter's legal-sufficiency arguments under the standard set forth in *Jackson*.[80] Under *Jackson*, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[81] In reaching a verdict, the jury is the judge of the credibility of witnesses and may assign the weight it chooses to assign to the testimony it hears in the trial.[82] On appeal, the reviewing court does not sit as a thirteenth juror and then substitute its judgment for the judgment the factfinder made based on the evidence it heard in the trial.[83] Instead, we must defer to the jury's responsibility to resolve the conflicts in the testimony, to weigh the evidence, and to draw

---

[79]*Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[80]*Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016).

[81]*Jackson*, 443 U.S. at 318-19 (emphasis in original); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

[82]*Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981).

[83]*See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899.

reasonable inferences from the evidence the parties present to the jury in the trial.[84] If the testimony the parties present to the jury conflicts, we presume the jury resolved that conflict in a manner that favors its verdict.[85] To decide whether the inferences the jury made in reaching its verdict are reasonable, we examine the combined and cumulative force of the evidence after viewing it in the light that favors the verdict the jury reached.[86] We treat direct and circumstantial evidence equally in our review.[87] "If a rational fact finder could have so found, we will not disturb the verdict on appeal.[88]

On appeal, Porter argues the State failed to present sufficient evidence to prove he assaulted Laura. He points to Laura's testimony that he never struck her while they were together in her truck. He argues she accused him of assaulting her because she was upset with him after he told her that he wanted a divorce. Laura also testified she felt no physical pain, illness, or impairment when Porter pushed her off the

---

[84]*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).
[85]*Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
[86]*Clayton*, 235 S.W.3d at 778.
[87]*Id.*
[88]*Fernandez v. State*, 479 S.W.3d at 838.

truck's wheel. Other than noting that Laura's testimony in the trial does not support his conviction for assault, Porter argues he was justified in striking Laura because he needed to prevent her from running over others who were present in the parking lot and to prevent her from injuring him since she was driving recklessly in the lot.

But the jury was not limited to considering Porter's and Laura's trial testimony in reaching its verdict in the trial. Along with their testimony, the jury heard the 911 call Rachel Rodriguez made within minutes of Laura's report of the alleged assault. When Laura reported that Porter assaulted her to her coworker, Laura had bruises to her head, which she told Rodriguez were caused when Porter hit her with his hand. We recognize, of course, that Laura testified differently about how she got the bruises in the trial, as she told the jury she stopped the truck on her way back to the store and intentionally struck her head against the steering wheel of the truck. Yet the jury saw the photos taken by Deputy Mosely, and as the factfinder, it was up to the jury to decide whether Laura intentionally caused bruises to her head by hitting her head on the steering wheel as she claimed in the trial or whether the bruises were there because Porter hit her in the head with his hand like she told

Rodriguez when she came back to work from her break. Acting as the factfinder, the jury could believe or disbelieve any witness's testimony, and it had the responsibility to reconcile any conflicts in testimony presented in the trial.[89]

While Laura testified Porter did not hurt her when they were in her truck, the jury was free to infer that Laura experienced pain based on the bruises she suffered to her face and from the fact that Laura was still crying when she appeared at the store about ten minutes after the altercation with Porter occurred.[90] Although the jury could have accepted Porter's and Laura's version of the events based on the testimony they provided the jury in the trial, the jury chose not to do so and that choice

---

[89] *See Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (it is the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts); *see also Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (holding that contradictions in evidence are reconciled by the jury and will not result in reversal so long as there is enough credible testimony to support the verdict).

[90] *See Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) ("The existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish 'bodily injury' within the meaning of the statute.").

was also reasonable from the evidence viewed as a whole.[91] After viewing the evidence as a whole and in the light that favors the verdict the jury reached, we find the evidence supports the jury's verdict and we overrule Porter's last two issues.

## Conclusion

Having concluded that Porter's issues lack merit, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 1, 2021
Opinion Delivered June 22, 2022
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

---

[91]*See Jackson,* 443 U.S. at 318-19 (emphasis in original); *Brooks*, 323 S.W.3d at 912.